Ruffin, Judge
 

 The admissibility of the evidence, rejected in the Superior Court, was, as a general principle at the common law, determined in
 
 Reel
 
 v.
 
 Reel.
 
 The discussion in that case was full, and the decision is to be regarded by succeeding judges, not only with respect, but in my opinion, as authoritative. For this reason, I must say I do not consider that question open to dispute.
 

 The stress of the argument for the plaintiff is. however, on the act of 1819, “to prevent frauds in the revo-eation of last wills.” It must appear to every one who reads the opinions in
 
 Reel
 
 v.
 
 Reel,
 
 that the judges there thought that the statute did not affect the question. It is true, the supposed testator there, died in 1818, and therefore, the point did not directly arise But the leading authority against the evidence,
 
 Jackson, v. Kniffen,
 
 
 *444
 
 was not treated by the court as inapplicable, upon the ground, that the statute of frauds was in force in New-York. On the contrary, although the opinions of the majority of the judges profess to be founded on that statute, this court rejected the case altogether, and expressly adopted the opinions of the dissenting judges,
 
 Spencer
 
 and
 
 Tompkins,
 
 who held that the statute, any more than the common law, ivas not against hearing the evidence.
 

 But as that was not the point of
 
 Reel
 
 v.
 
 Reel,
 
 the court have now treated it as yet undecided here, and deliberately considered the question anew. My own opinion is quite clear, that the case is not within the purview of the statute, nor within the mischief.
 

 The act relates exclusively to the revocation of wills. It pre-supposes in every case a will, good
 
 ah origine, to
 
 exist. It does not profess to touch the validity of the instrument, as depending upon the formality of its execution, or the disposing capacity or purpose of the maker. Nor does it prescribe the evidence by which those facts shall be proved. Those requisites are left as they stood at the common law, or by other statutes. This act does not say, nor mean, that a writing having the prescribed forms of a will, but obtained by fraud, duress or undue influence, shall, by force of the formal circumstances, be a will. But it says, that such an instrument, having not only the forms, but having at its execution, been in reality the instrument it purports to be, shall only be
 
 revoked
 
 by another will, or other mode prescribed in the act. The very title shews this
 
 ;
 
 -which is, “ to prevent frauds in the revocation of
 
 wills.”
 
 In fine, the act goes wholly to a change of mind in the testator, and not to the original want of the
 
 animus
 
 disponendi.
 

 Here, perhaps, I might properly leave the case, since it is our province only to ascertain the meaning of the legislature, and not to carry their enactments beyond their meaning, because we might think they ought to have gone further. Yet I think in this case, notwithstanding the argument and authorities offered for the plaintiff, that there is a plain reason why the statute was not made broader.
 

 
 *445
 
 s It is said, the admission of this evidence is an evasion of the statute, and will bring in all the evils that it was meant to remedy ; that there is little difference between a declaration, “ that I revoke my will,” and that paper never was my will, it is a forgery”' — or “I was forced to sign it.” And it is further insisted, that if the statute will not exclude it in all cases, yet the rule should be in analogy to it and exclude it in all cases, when the supposed testator had it in his power, by other means than his declarations, to destroy the operation of the instrument; as where he had possession of it, or lived long after, free of restraint/and could have made another will.
 

 I admit, that evidence of such declarations may mislead a jury. So indeed, may almost all evidence submitted to them — especially, if it be competent for one purpose, and not so for another. This is incident to our tribunals as constituted, and not peculiarto this species of evidence. If it be competent for any purpose, the court must, receive it, at the risk of misconception or misapplication by the jury. The law does not anticipate cither, hut the contrary ; not a misconception because the court should explain the purpose for which it is received, and the point it tends to establish ; nor a misapplication, because there is a reliance on the integrity of the jurors. There is no instance in which the legitimate and illegitimate purposes of introducing evidence, are more distinct or more obvious to a common understanding, than the one before us. The one is to determine, whether a will was made, and fairly made; the other, whether the operation of such an instrument, not destroyed, has been recalled. This last, the legislature has enacted, shall not be proved by parol. Can the court by any analogy say the same of the former? If we are to look to the policy, what is that which governed the legislature? It is not, that a will once made in writing is, from that circumstance, to be taken as necessarily in its nature continuing to be the will of the maker, until it be can-celled or revoked in writing ; nor that it is not right to annul it, as soon as it is made to appear in any manner — ■ whether by parol or otherwise — that it did not continue
 
 *446
 
 to be the maker’s will. But the reason for not hearing the parol proof is. that
 
 there
 
 is not the
 
 ordinary security
 
 |]ia¿ ¡j- js f¡.ue. The declarations sworn to, are those of a dead person, and generally will purport to have been made to the witness or witnesses alone. The law-giver may well act on the presumption, which experience proves to be too well founded, that many men are withheld from ■falsehood, less by the restraint of conscience, than by the apprehension of detection , and temporal punishment.— This is the principle of the statute. It repudiates the testimony, not because it ought not to be acted on, if true, but because, if false, there are no means of shewing it to be so, and because that
 
 circumstance
 
 constitutes an immunity to the witness, which tempts him to crime.
 

 But when the evidence is of declarations relating to the creation of the will, there are not only the guarantees for veracity, common to other cases, but peculiar ones, arising out of the provisions of the statutes, passed to secure to the citizen the establishment of the will he has made, and against the imposition of one he has not made. Such declarations would be manifestly inofficious in the case of a will altogether in the testator’s own hand writing. With respect to attested wills, there must in all cases be one, and where land is devised, two witnesses capable of speaking to the fact, to which tlje declarations purport to refer. There is then witness against witness, and the case is not within the policy which dictated
 
 the
 
 statute, more than within its words. Against this conclusion, the case of
 
 Provis
 
 v.
 
 Reed,
 
 (15 Eng.
 
 Com. L. Rep.
 
 490,) has been cited. The opinion of Mr. Justice Parke, is founded on the policy of the statute of frauds ; but Chief-Justice
 
 Rest,
 
 and the other judges, do not go on the legislative provisions, but on general principles. I do not find that any other English Judge, but Mr.
 
 Parke,
 
 has entertained the opinion expressed by him — that is, for his reasons. The decision of the whole coiirt was, it is true, against the evidence. But upon the general question, the respect due to those judges, is overborne by the authority of a judgment of our own courts, directly in point; and certainly the case.s
 
 *447
 
 sited in
 
 Reel
 
 v.
 
 Reel,
 
 prove that the court .of common pleas erred in supposing that the Question was made in that case for the first time.
 

 The residue of the objection obviously goes to the weight of the evidence. It is true, there are many cases in which it would be entitled to but little, weight; nay, but few in which it would be entitled to any. Yet if there be others, in which it would subserve the cause of truth and justice, it must be heard, leaving its effect to those whose province it is to weigh it. I think there is little danger in this, when the court can aid the jury by pointing out its legitimate tendency. When the fact of fair execution is once established by witnesses fully believed, the credit of the witnesses deposing to declarations inconsistent therewith, is at once subjected to a severe tost. But suppose the declarations to be fully and satisfactorily proved, there are so many other motives for a testator to speak evasively or even untruly, both of the execution and the provisions of his will, besides that of disavowing it, in its actual form, to be his will, as to prevent much attention being paid by any body to such evidence. Looking at such evidence judicially, in a case in which it should be addressed to me, I should give it, if any, the least possible effect in the case supposed. For if the testator lived long after executing the instrument, had the possession of it, or could command it, or had it in his power to make another will, or to revoke •the first, and did not, the fact of leaving it in existence, supported by the witnesses to it, to be repelled only by the uncertain evidence of his vague declarations, so far outweighs, in a reasonable mind, those declarations, as to make them but dust in the balance. The declarations were never made, or have been misunderstood, or were not serious, but intended to deceive. The truth in these respects is not likely to be obscured, because it ss to be recollected, that the attesting or other witnesses on the other side, must speak to the very fact, to which the declarations refer. But it is likewise to be remembered, that the witnesses offered to support the- will, may testify untruly. Of their truth, the sunseijuent declarations are, amongst other tilings,
 
 *448
 
 the test. Suppose a
 
 forgery
 
 of a will out and out, and that the supposed testator averred solemnly on his death bed, that he never had made a will, and that he meant to die intestate, and this established by indubitable proof. If this evidencecould not be heard, a single perjured witness might establish a fabricated writing disposing of the largest personal estate, and two might carry all.— On this ground, evidence of this character must be admissible. As was said in
 
 Reel
 
 v.
 
 Reel,
 
 a contrary rule would palm upon the world wills never made, or made under duress — a proposition, the very stating of which shocks us. Wherefore, I think there must be a new trial.
 

 Henderson, Chief-Justice.
 

 I adhere to the opinion I expressed in the case of
 
 Reel
 
 v.
 
 Reel,
 
 nor do I think that the act of 1819, providing that no written will shall be altered or revoked by parol, affects this question. It is very clearly not within the words of the act, for they relate to what was once a
 
 will;
 
 these declarations are offered to show that the proposed script never was a will. The questions are essentially different in their nature. The act prohibits a will when actually made, from being altered or revoked by parol evidence. This is an attempt to exclude declarations going to show, that it is not and never was a will. Suppose the defendant had made a case going to show a forgery, and the question was nearly balanced ; shall not the declarations of the alleged testator be heard, to
 
 determine
 
 the fact ? Does the letter or the spirit of the act inhibit it ? Yet if the testimony be excluded under the statute, in a case like the present, it must be excluded in all.— It is enough for courts to see and ascertain the legislative will, it is not for them to enquire, why the legislature has excluded parol evidence, upon questions of alteration or revocation, and permitted it in questions touching the making of a will. But I think, I can perceive why they inhibited it in the one case, and not in the other ; in the first place, if the written will be established, there is clear and certain proof of what was the will of the testator, at one time. By admitting mere parol
 
 *449
 
 declarations of revocation or alteration, a very uncertain and questionable will may be substituted, by the perjury and misrepresentation of witnesses, for one clearly es-testablished, and there are no means of preventing these perjuries, as they point to nothing, by which their fal. sity may be detected. Mere words, such as “ I revoke my will,” which were admissible before the late statute, cannot be easily disproved, because they may be sworn to have been uttered, when no one but the perjured witnesses were present. But it is not so with declarations that tiie script in question, never was the will of the supposed'testator ; they refer to the time of the alleged making — to tiie opposing proof which supports the will — and they may be weighed and compared with it. This policy is not confined to the act of 1817. It is to be found in tike book debt law ; a person may swear to his account for goods sold and
 
 delivered,
 
 (not sold only,) or for
 
 work
 
 and
 
 labour
 
 done; but not to a special agreement, or even to money lent, because the latter are incapable of disproof ; they point to nothing, by which their truth can be tested. It is otherwise as to goods sold and delivered, or work and labour done. There is some chance of opposing false accounts of this description, for the consideration is something visible, something tangible, the want of which, may very probably be shown, and prevent imposition to any great extent. The same policy is visible in this statute. It is not for me to say how much such evidence ought to weigh, having, as I have elsewhere observed, no weights and measures for my own mind. It must, under the circumstances of each case, be left to the judgment and discretion of the jury as rational men ; if they believe it, they will give it effect, if they do not believe it, of course they will pay no attention to it. I think a new trial should be granted.