IN RE WORTH'S WILL.

(Filed November 12, 1901.)

1. WITNESSES—*Competency—The Code, Sec. 590.*

Under The Code, Sec. 590, a witness may testify against his own interest, even if thereby other parties to the suit are injuriously affected, and the disqualification applies only when a witness testifies in his own behalf.

2. APPEAL—*Assignment of Errors—Case on Appeal—Exceptions and Objections—Evidence.*

Where a question suggests with sufficient certainty the facts intended to be elicited, the supreme court will pass upon the exception to the refusal to admit the question, although its object is not specifically set out in the assignment of error.

3. WILLS—*Undue Influence—Instructions—Evidence.*

The unequal distribution of property of testator among his children and grandchildren and other evidences of irregularity on the face of the will is evidence tending to show undue influence upon the testator.

APPLICATION of Hal M. Worth and others for the probate of the will of J. M. Worth, deceased, heard by Judge *H. R. Bryan* and a jury, at December Term, 1900, of the Superior Court of RANDOLPH County. From an order probating will, the caveators, R. W. Bingham and others, appealed.

*Long & Nicholson,* and *J. T. Morehead,* for the propounders.

*Bynum & Bynum, D. L. Russell,* and *Watson, Buxton & Watson,* for the caveators.

MONTGOMERY, J. The first exception of the appellants is addressed to the ruling of his Honor excluding the testimony of Mrs. Crocker, one of their witnesses. She was the daugh-

ter-in-law of the testator, and had received a legacy of $2,000 under the script which was then before the Court on the issue *devisavit vel non*. It appeared in the evidence that the testator had made another will in 1894, in which a legacy had been given to the witness, but the amount of the legacy was not stated, and there was no evidence as to the destruction or revocation of that will by the testator. The appellants insist that the witness ought not to have been excluded under section 590 of The Code, because she was not testifying in her own behalf, but against her interest, and therefore a competent witness.

Under section 343 of The Code of Civil Procedure, no party to the action or proceeding, or any persons who had an interest which might be affected by the event of the action or proceeding, or who ever had an interest, were allowed to be examined in regard to any transaction or communication between such witness and a person at the time of such examination deceased, insane or lunatic, as a witness against a party then prosecuting or defending the action as executor, administrator, heir-at-law, * * * when such examination or any judgment or determination in such action could in any manner affect the interest of such witness, or the interest previously owned or represented by him. There was a proviso, however, which allowed the witness to be examined if the personal representative, heir-at-law, etc., testified in his own behalf in regard to such transaction and communication. It seems clear to us that under that section a party or a person interested in the event of the suit (except under the proviso) was prohibited from testifying either for or against himself concerning a transaction with a deceased person, idiot or lunatic. The appellants insist, however, that a most important change was wrought in section 343 C. C. P. by an amendment thereto, and now appearing in section 590 of

The Code, by which such a witness is excluded only when he is offered in such actions or proceedings in *his own behalf*.

The appellees contend that the witness in this case was properly excluded, first, because the witness is a legatee under the script of 1899, and also under a former will, and as no proof had been adduced that the legacy in the former will was smaller than in the will of 1899, that she ought to be excluded on the ground of being interested in the event of the action and to her advantage; and, second, that even if it should be conceded that she might have been allowed to testify against her interest, if it had appeared that her legacy was smaller in the will of 1894 than in the will of 1899, yet under no circumstances could she be allowed to testify against the other defendants (propounders), and that she would be in effect doing so if allowed to testify against her own interest in a case like this. The appellees rely in support of their position mainly upon the case of *Weinstein v. Patrick,* 75 N. C., 344. That case was a peculiar one. A fraudulent grantee in a deed for land, who was also a creditor of the grantor who had died, had made a voluntary deed for the land to the wife of the deceased grantor, with covenant of warranty, and in an action brought by creditors against the witness and his grantee to compel the administrator of his deceased debtor and original grantor to sell the land for the payment of his debts, was offered by the plaintiffs to prove the fraud in the transaction. This Court said, there, that while it might be permissible for the plaintiffs to examine the witness to testify against his own interest (connected with the covenant of warranty in his deed to the other defendant), yet in doing that he had testified against the other defendants, which could not be allowed. It seems to us that the Court in that case, when it declared that the witness might be allowed to testify against his own interest, did not follow the strict letter of section 343 of The Code of Civil Procedure, because that

section excluded the testimony of all such witnesses, where such testimony could in any. manner (which means, we think, advantageously or injuriously) affect the interest of the witness. But the main reason given in that case for the exclusion of the witness was because, that although a defendant in form, he was a plaintiff in substance; that his interest was identical with the plaintiffs'—both being creditors of the deceased—and if the sale of . the land to the witness should be declared void as to creditors, the witness would get his debt; and the Court, citing the case of *Redman v. Redman,* 70 N. C., 257, treated the defendant as a plaintiff. The Court there stated that the witness, in his deed to the land to the other co-defendant, warranted the title, and that to that extent he was interested to support the transaction between himself and the deceased, but on which side his interest predominated the Court did not know. They said in conclusion, "But under all the circumstances we do not think he was competent to speak of the transaction between him and the deceased." It will be obesrved that the Court in that case did not give as a reason for the exclusion of the witness the fact that they could not tell on which side the interest of the witness predominated, but they put it upon the particular circumstances . of that case. We think that the rules laid down in that case do not apply to the case before us.

A very satisfactory analysis of the meaning of section 590 of The Code is found in the case of *Bunn v. Todd,* opinion by Judge CLARK, 107 N. C., 266. There, the disqualifications are shown to extend only to parties to the action, persons interested in the event of the action, persons through or under whom the persons in the first two classes derive their title or interest when they are offered to testify in behalf of themselves, or to the person succeeding to their title or interest, against the representative of a deceased person, or a committee of a lunatic, or anyone deriving his title or interest

through them, and where the subject-matter about which they offered to testify is a personal transaction or communication between the witness and the person since deceased or lunatic. And there is an exception made in the rule of disqualification in cases where the representative of the deceased or of a lunatic introduces evidence concerning the transaction. Applying that analysis to the facts of this case, it seems clear to us that the witness (Mrs. Crocker) should have been permitted to testify if the legacy in the former will did not disqualify her. We think, for it to have had that effect, it was necessary that evidence should have been adduced going to show that the legacy in the former will was larger than that given to the witness in the script of 1899, and that was not done.

As we have seen, under section 343 C. C. P, she would have been disqualified whether her testimony was to be in her own behalf or against her; and that rule, as we have seen, if varied in the case of *Weinstein v. Patrick, supra,* was only under the special circumstances of that particular case, and even then contrary to the literal expressions of section 343, C. C. P.

But under section 590 of The Code, there is nothing to prevent a witness in any civil action or proceeding to testify against his own interest, even if in doing so the interest of other parties to the suit are injuriously affected. The disqualification is when they testify *in their own behalf.* But the appellees contend that the exceptions made by the appellants to the ruling of his Honor rejecting the evidence of Mrs. Crocker were insufficiently stated. In answer to that, we will say that although the evidence which the appellants sought to bring out by the questions to the witnesses was not specially set out in the assignments of error, yet we think that the question itself, asked by counsel of caveators of a witness interested under the will of 1899, suggests with suffi-

cient certainty the meaning and materiality of the evidence offered and rejected. *Watts v. Warren,* 108 N. C., 514.

The witness R. W. Bingham does not stand on the same footing with Mrs. Crocker. The testimony offered from him was directly in his own behalf, all the evidence going to show that if the will had been executed by the testator through the undue influence of one of the main beneficiaries, that he would have taken, as representative of his deceased mother, or as legatee under a former will, a respectable estate; whereas, he got nothing under the will of 1899.

The fifteenth exception, we think, should be sustained. In his charge to the jury, his Honor said: "The jury have nothing to do with the fairness or unfairness, or the equity or inequity, of the testamentary disposition of Dr. Worth's property. The only question for them to try is this: Is the paper-writing, and every part thereof, the last will and testament of J. M. Worth? And your answer to the question must be 'Yes' or 'No.'" Then his Honor, after immediately saying, "The jury are to take the law in this case from the Court; you must determine the facts from the evidence and apply the law as given by the Court to them as you find them to be," went on to discuss fully the question of undue influence and its bearings on the case; but he nowhere, in connection with the part of his charge above quoted, told the jury that the unequal distribution of the testator's property among his children and grandchildren, and other evidences of inequality on the face of the will, should be considered by them, in connection with other circumstances, as tending to show undue influence. This he should have done. It is true that his Honor did, in the middle of a very long series of special instructions asked by the propounders (and which were all given except the last, which was to the effect that there was no sufficient testimony of the script having been executed under undue influence), read the following

prayer to the jury: "6. There is no legal presumption of undue influence on account of relationship of Dr. Worth to his daughter and her family, nor is there any legal presumption of undue influence from the fact, if you so find it, that Dr. Worth was surrounded by and lived with her and others of her family who received large benefits under the will, whilst other of his kin lived at a distance, nor is there any legal presumption of undue influence that will arise by reason of the fact, if you so find, that better provisions are made in the will for some of the testators' next of kin than those which he made for others. These facts and circumstances, if proved to the satisfaction of the jury, raise no presumption of law, but the jury may consider them only along with other facts and circumstances in the case to enable them to pass upon the question of undue influence alleged by the caveators."

If that prayer, which was given, and of course constituted a part of the charge, had been used in connection with that part which we have quoted, and as explanatory of it, no fault could have been found. But the feature of the charge which we think objectionable, having been given to the jury near the close of the charge, and without explanation, was calculated to confuse the jury, with the probabilities that they took,, as the law governing the case, from his Honor the part which we have called objectionable, and that they did not take into consideration the inequalities on the face of the will as evidence, together with other facts and circumstances tending to show undue influence exerted on the testator by one of the beneficiaries.

We will not discuss the many other exceptions of the appellants, because they are of such a nature that if disposed of in this appeal they would probably have to be considered again in other forms, or might not be raised at all.

New Trial.