John L. Hinton, whose will is attacked, and by the judgment declared not to be his will, died in January, 1910, leaving surviving him his widow, Sophie (since deceased), and six children, viz.: Mary F. Hinton, Sophie Ida Sawyer, Charles L. Hinton, E. V. Hinton, W. E. Hinton, and R. L. Hinton. There also survived him the children of another son, John C. Hinton, who died 4 September, 1902, before the will was probated.
After the death of John L. Hinton, the devisee, Mary F. Hinton, died, unmarried and intestate. After the caveat was filed and one hearing was had, Charles L. Hinton, another devisee, and one of the executors, died. The will was admitted to probate on 29 January, 1910. On 30 September, 1918, a caveat was filed by the daughters of John C. Hinton, the son of testator who had died before the will was made, viz.: Ada Whitehurst (with her husband), Flossie Nosay (with her husband), and Sophie Morgan (with her husband). The attack on the will is based upon the usual grounds — want of mental capacity and undue influence.
The will, if valid, devises a life estate to the widow in all lands of testator in North Carolina, except the Gordon farm in Camden County, with remainder to his six children named. All property in other states is devised to his four sons, and the property in this State is devised to his four sons, and the Gordon farm is devised to his daughter-in-law, the widow of John C. Hinton, deceased, for life, then to her four children, the caveators, and another child, John, who later died. C. L. Hinton and R. L. Hinton, testator's sons, were named as executors. The will, as stated, was dated 4 September, 1902, and was witnessed by George B. Pendleton, connected with the First National Bank of Elizabeth City, and W. T. Old, cashier of said bank. Thereafter, on 18 May, 1906, testator wrote on the face of the will and across the devise of the Gordon farm as follows: "I revoke the gift of the Gordon farm, 18 May, 1906." Signed John L. Hinton. *Page 209 
The caveators aver that at the time of the execution of the paper-writing (4 September, 1902), "and continuously thereafter, until his death," John L. Hinton was without mental capacity to make a will. They further aver that his signature thereto was obtained by undue influence and improper influence.
For their verdict the jury found:
That more than seven years elapsed between the probate of the will and the filing of the caveat, and that more than three years elapsed after Mrs. Whitehurst and Mrs. Nosay came of age before caveat was filed.
That Mrs. Whitehurst and Mrs. Nosay both married during minority, and have since been at all times under coverture.
That the execution of the paper-writing was procured by undue influence.
That at the time of execution of the paper-writing, on 4 September, 1902, John L. Hinton did not have mental capacity sufficient to make and execute a valid will.
That the paper-writing is not the last will and testament of John L. Hinton, deceased.
During the progress of the trial, and near its conclusion, the court permitted Mrs. John C. Hinton, mother of original caveators, to come in as a party, and adopt the caveat as her pleading, over propounders' objection. And the court permitted Mrs. John C. Hinton to then renounce her claim to the Gordon farm, and to waive objection to the revocation of that devise. After these preliminaries, Mrs. John C. Hinton testified as appears in the record.
Propounders, in apt time and by proper request, sought to have stricken out by the court the charge of undue influence, upon the ground that it consisted solely of allegation and suggestion, wholly unsupported by evidence fit to be submitted to the jury, and propounders insist that the record sustains their contention in this respect. They further contend that there was error very prejudicial to propounders in many instances, in the admission of testimony and evidence designed to bear upon both the question of mental incapacity and the suggestion of undue influence, so prejudicial, in fact, that if error there is, it should be held for reversible error.
The court entered judgment upon the verdict, and propounders appealed.
after stating the case: We will first consider the case so far as it relates to the mental capacity of the testator to make a will at the time he executed the one in question.
The principle complaint of the propounders, on this branch of the case, is that the judge admitted the testimony of Mrs. John C. Hinton, the daughter-in-law of the testator, having married his son, John C. Hinton, who died before the will was made. She was made a party to the proceeding, why, we cannot see, as she did not caveat the revocation of the clause of the will by which the testator had devised to her for life the Gordon Farm. But, assuming that having her made a party was legal, and both wise and expedient, we do not see how it can affect the competency of her testimony. We do not agree with learned counsel (who have filed a most excellent and ingenious brief, reinforced by an able oral argument by Judge Bragaw), that she was permitted to testify as to conversations with the testator bearing solely, or even partially, on the other issue as to undue influence, and if her testimony did include it, it did so incidentally, and bore directly on the issue as to his mental capacity. This being so, the remedy of propounders was to request the judge to caution the jury not to use it for any such purpose. It frequently happens that testimony may tend to prove matters not strictly within its competency, or, as we sometimes say, competent for one purpose and not for another, and it therefore becomes the duty of the presiding judge, by proper and careful instructions, to caution the jury as to how it should be restricted, for instance, where an expert is testifying as to the mental capacity of a person, where that issue is involved in the case, he may relate any conversation or communication with that person, or detail his conduct in the expert's presence, even though it may, in form and substance, be proof of relevant facts, in which case it would be admissible with proper caution to the jury from the judge as to how it should be considered by them, and a further warning that they should not use it at all, directly or indirectly, as proof of the facts the statement or conversation contained, but solely as evidence bearing upon the question of his mental capacity to make a deed, contract, or will, or to commit a crime, if he is being then prosecuted for one. The authorities are full, clear, and even positive to this effect. McLeary v. Norment,84 N.C. 235, is a sufficient authority for this proposition, and the language of Chief Justice Smith, in referring to the Code of Civil Procedure, sec. 343 (The Code, sec. 590; Rev., 1631), is so much to the point, and presents a case so clearly analogous to this, that we leave all the exceptions based upon evidence of this kind to what he says at p. 237: "The proviso proceeds upon the idea that, unless both can be heard, it is best to hear neither. But the conversations offered are not to prove any fact stated or implied, but the mental condition of the plaintiff, as *Page 211 
declarations are received to show the presence of disease in the physical system. How, except through observation of the acts and utterances of a person, can you arrive at a knowledge of his health of body and mind? As sanity is ascertained from sensible and sane acts and expressions, so may and must any conclusion of unsoundness be reached by the same means and the same evidence. The declarations are not received to show the truth of the things declared, but as evidence of a disordered intellect, of which they are the outward manifestations. Would it not be competent to show an attempt at self-destruction? And do not foolish and irrational utterances equally tend to show the loss of reason, when proceeding from the same person? In either case the conduct and the language may be feigned and insincere, but this will only require a more careful scrutiny of the evidence, and does not require its total rejection. The admissibility of the witness's opinion, resting, as it necessarily must, upon past opportunities of observing one's conduct, requires, in order to a correct estimate of the value of the opinion, an inquiry into the facts and circumstances from which it has been formed. There seems to be no sufficient reason for receiving the opinion and excluding proof of the facts upon which it is founded. As an irrational mind manifests itself in irrational and foolish acts and expressions (and in this view the words are of equivalent import), so proof of the latter point to the insane source of which they are the offspring." It seems to us that McLeary's case answers many of the sixty-five exceptions we find in the record. See, also,Rakestraw v. Pratt, 160 N.C. 437; In re Chisman's Will, 175 N.C. 420; 22 Corpus Juris, pp. 599-609; Linebarger v. Linebarger, 143 N.C. 229; In reStock's Will, 175 N.C. 224; Bissett v. Bailey, 176 N.C. 44. This rule does not apply where the exercise of undue influence is the question. Hathawayv. Hathaway, 91 N.C. 139; Linebarger v. Linebarger, supra; Bunn v. Todd,107 N.C. 266. It would be a work of supererogation to consider so many exceptions in detail, and, therefore, we will confine ourselves to the salient and decisive ones. A full and minute discussion of this kind of testimony, and the reasons for admitting it, will be found in the following authorities. 17 Cyc., pp. 136-152, and particularly the footnotes; Clary v.Clary, 24 N.C. 78; McRae v. Malloy, 93 N.C. 160; Whitaker v. Hamilton,126 N.C. 465; 1 Greenleaf on Ev., sec. 441.
If the evidence offered to prove insanity, or mental incapacity, was relevant also on the first issue, as to undue influence, that did not authorize the exclusion of it upon a general objection, because that goes to the entire evidence or implies that all of it is incompetent, and if any part of it is admissible, the objection, in general form, must fail. The propounders should have asked (under Rule 27 of this Court, 174 N.C. at p. 834) that the evidence be restricted "to the purpose" for *Page 212 
which it is competent. The testimony admitted here was certainly competent on the second issue, as to mental capacity, and we do not think it was allowed to apply to the other issue as to undue influence.
Disinheritance of children, or those who, under the particular facts of this case appears to have had a strong claim on the testator's bounty, such, for example, as his grandchildren, is competent evidence to show his mental incapacity to execute a will, and generally to show the state of his mind in respect to the transaction. In re Burn's Will, 121 N.C. 336; Bostv. Bost, 87 N.C. 477; Reel v. Reel, 8 N.C. 248; Howell v. Barden,14 N.C. 442.
The evidence tends to show that the caveators were the widow of his son, who bore his name, and his children, and therefore grandchildren of the testator, who had peculiar claims to his affection and generosity, because they were destitute when the husband and father died. One of the grandchildren, a little boy, appealed for help to him, because, as he pathetically said, "I have no father now, and want you to help us," which the testator promised to do, but did not do, as normal men would have done. He devised them the Gordon farm, but canceled the clause afterwards. His children were in good financial circumstances, and they received from him, in his lifetime, deeds for very valuable property, besides all they got under the will. There was great disproportion between what they received from him by deeds and will, and the caveators, of course, as these destitute grandchildren got nothing. The propounders got it all. When his son's widow told him "the pitiable story of her plight, and that of her children, he replied that he was too poor to help, as poor as she; that it required all his money to keep up his policies, and by these expressions and his subsequent conduct showed he had completely forgotten them and the promise made to them and their little brother at the time of their father's death." He was not poor at all, but wealthy, as wealth was considered at that time. There was not only some evidence of his mental incapacity, but very strong and convincing evidence of it, the details of which it is not necessary to set forth. There was also plenary evidence of undue influence. None of the beneficiaries under the will went to the stand, although they were present at the trial, and faced in silence the accusation against them of exercising undue and fraudulent influence under the distressing circumstances of the case, depriving the grandchildren, who were their nieces and nephews, of their just share in their grandfathers' estate. A clearer and stronger case of insanity and undue influence could hardly be made out. We are at a loss to conceive why propounders did not take the witness stand to refute the personal charges made against them, unless they knew them to be true and unanswerable, or felt that they could not overcome the evidence of their truth offered by the caveators, *Page 213 
or did not wish to undergo the ordeal of a severe cross-examination, which might disclose to the jury how unfeelingly they had treated the caveators, who, because of their helpless and hopeless condition, were entitled to their care and protection, instead of being the victims of their cupidity. There can be no wonder that the verdict was against them. Evidence of this kind was competent for the jury to consider, for when one can easily disprove a charge by testimony within his control, and which he can then produce, and fails to do it, it is some proof that he cannot refute the charge. Goodman v. Sapp, 102 N.C. 477; Powell v. Strickland, 163 N.C. 393;Bank v. McArthur, 168 N.C. at p. 54; Trust Co. v. Bank, 166 N.C. at 122.
There is some objection made to the manner in which Mrs. John C. Hinton delivered her testimony, as to her alleged conduct when on the stand as a witness, and especially to her constant display of deep emotion, even being driven to tears by the sad story she was relating. These are matters for the control of the court in its discretion, which should be exercised at all times to prevent prejudice and unfairness to either party, and we have no doubt that the able and just judge who presided at the trial did all that the law required of him in the circumstances. We see nothing to the contrary. S. v. Tyson, 133 N.C. 692; citing Knight v. Houghtalling,85 N.C. 17; Horah v. Knox, 87 N.C. 487. It was said in S. v. Tyson, supra:
"We conclude, therefore, that the conduct of a trial in the court below, including the argument of counsel, must be left largely to the control and direction of the presiding judge, who, to be sure, should be careful to see that nothing is said or done which would be calculated unduly to prejudice any party in the prosecution or defense of his case, and when counsel grossly abuse their privilege at any time in the course of the trial the presiding judge should interfere at once, when objection is made at the time, and correct the abuse. If no objection is made, while it is still proper for the judge to interfere in order to preserve the due and orderly administration of justice, and to prevent prejudice and to secure a fair and impartial trial of the facts, it is not his duty to do so in the sense that his failure to act at the time or to caution the jury in his charge will entitle the party who alleges that he has been injured to a new trial. Before that result can follow the judge's inaction, objection must be entered, at least before the verdict."
The exception that the judge, in defining mental capacity, said, in one part of his charge, that the testator must have had "testamentary judgment" is untenable, as he immediately explained to the jury, by manifest implication, what he meant, by telling them that he must have "testamentary capacity," and again, that he must have a "testamentary mind," and the jury could not have inferred that he must be able to *Page 214 
dispose of his estate wisely, justly, and discreetly. We must consider the whole charge, its full context, to ascertain its real meaning, and not merely excerpts from it. S. v. Exum, 138 N.C. 599; Kornegay v. R. R.,154 N.C. 389.
The amendment of the pleadings to raise the question of the statute of limitations was a matter of discretion not reviewable here. But if the statute had been pleaded in due time, we are of the opinion that it would not be available to the propounders under the facts and circumstances of this case. The Laws of 1907, ch. 862 (Rev., 3135), has this proviso: "If any person entitled to file a caveat be within the age of twenty-one years, or a married woman, or insane, or imprisoned, then such person may file a caveat within three years after the removal of such disability." The court submitted these two issues: "(4) Was the caveat filed more than seven years after the original probate of the will in controversy, and more than three years after Mrs. Ada Whitehurst and Mrs. Florence Nosay each had attained the age of twenty-one years? (5) Were the caveators, Mrs. Whitehurst, Mrs. Nosay, and Mrs. Morgan, each married to their present husbands during her minority, and have they since their marriage been at all times under coverture?" Both of which were answered "Yes." So that it can make no difference if the court refused to submit the other one requested by the propounders, as the findings upon the fourth and fifth issues prevent the bar of the statute, as will appear from its own language.
The motions for nonsuit, and to dismiss the proceedings, and the request for instructions to find for propounders on the issue as to undue influence, were properly disallowed. One who propounds a will for probate cannot suffer a nonsuit nor withdraw the paper propounded. The proceeding in the court is one in rem, and it is bound to give its sentence on the paper itself — the res — without regard to particular persons, but always endeavoring to give proper notice to all parties interested. St.John's Lodge v. Callender, 26 N.C. 334. "When a will is offered for probate, the proceeding is not a civil action, nor is it a special proceeding, but is in rem, to which there are, strictly speaking, no parties. When an issue devisavit vel non is raised, the court will require all persons interested in the matter to be brought before it. Any of them may withdraw if they see proper, but none of them have a right to take or suffer a judgment of nonsuit, or dismiss the proceeding." Hutson v. Sawyer,104 N.C. 1. Besides, there was ample evidence to justify the verdict on both issues, as we have shown. In re Worth's Will, 129 N.C. 223; Bost v.Bost, supra; Ross v. Christmas, 23 N.C. 209. The testator was devoid of testamentary capacity, and his will (or volition), if he had any left, was completely dethroned or overmastered. The treatment of the widow of testator's son and namesake *Page 215 
by the beneficiaries named in the will was peculiarly heartless under the circumstances. How they could resist the cry of the little orphans for their protection and care, almost an appeal for bread, we are unable to understand.
We have discussed the exception as to the modification of prayers for instruction submitted by propounders. The judge fully explained his meaning of the first, and the other additions to the prayers were entirely proper to make his meaning and the law clear to the jury. Instructions are not bound to be in the language of the prayers, but it is sufficient to give them substantially. Graves v. Jackson, 150 N.C. 383; Marcom v. Durham,165 N.C. 259.
We may add that caveators waived all rights under the clause of the will devising the "Gordon farm," and submitted to its cancellation, so that there was no special issue as to that matter.
The prayers of propounders, so far as they were proper, were substantially given in the charge, which was a full, fair, and able presentation of the facts and the law, and, in strict accordance with the precedents of this Court.
The other exceptions are either covered by what we have said, or are untenable in themselves. The propounders had a fair opportunity to meet and answer the allegations of caveators, and to show their right to have the will sustained, if such they had.
There was abundant testimony in this case to support the finding on the first and second issues, and if the rulings on either of them were correct, the will must be set aside. There surely was no error as to the second issue, as to mental capacity, and we are satisfied that there was none upon the first, as to undue influence. The evidence was sufficient to support the verdict even under the case of In re Craven's Will, 169 N.C. 567. It is not necessary to show that actual violence or physical force was employed in procuring the will. Coercion amounting to undue influence may exist where the only pressure felt is that which is upon the mind of the testator. Terrors afflicting and affecting the powers of the imagination will frequently deprive a man of his free agency. It is a well known fact that the strength and vigor of the will and the condition of the mental powers are largely dependent upon the physical condition of the individual. If a man's physical frame is weakened by old age and debilitated by a long and lingering illness, or racked by excruciating pain, it is in vain to expect from him that mental vigor and attention to his affairs, or that independent spirit in managing and arranging them, that we find present in one who is physically strong and vigorous. Hence, the physical condition of the deceased is always relevant. It may be shown that he was in feeble health when he executed the will, and that he had been suffering from illness for some time prior *Page 216 
thereto. For it is well established that the conduct of a person, himself in vigorous bodily strength, towards another who is ill, though mentally sound, may so intimidate the latter and fill his mind with fear that he passes under the complete control of the former. But physical weakness alone, whether the result of old age or produced by illness, is never conclusive on the question of undue influence. But evidence of the fact that when he executed the will the testator was seriously ill, and that he was very feeble physically as the result of old age or disease, in connection with other facts and circumstances tending to show that he was unable to exercise his will freely and intelligently, so that it was not in fact his will, but the product of some coercive influence, which he was unable to resist, may justify a finding that it was procured by undue influence. 1 Underhill on Wills, sec. 139.
We have examined the case closely and with care, giving strict attention to each and all of propounders' exceptions, and after our review of the case we can find no error committed at the trial, and none in the record.
No error.