IN THE MATTER OF THE WILL OF ISABELL WORRELL, Deceased

No. 7712SC333 and No. 7712SC156

(Filed 21 February 1978)

1. **Jury § 6.3— caveat proceeding—voir dire examination of jurors—scope of examination improperly limited**

Though it was error for the trial court to refuse to permit propounders, during the voir dire examination of prospective jurors, to inquire if they believed in the right of a person to make a will, such error was not sufficiently prejudicial to warrant a new trial, particularly in view of the court's instruction to the jury that "[a] testatrix has the right to leave her property to whomever she pleases if she has the mental capacity to do so."

2. **Wills § 20— caveat proceeding—execution of will—changes—evidence properly excluded**

The trial court in a caveat proceeding did not err in failing to permit one of the propounders who was named executor in the will to testify with respect to his conversation with testatrix prior to preparation of the purported will relating how she wanted to leave her property and in not allowing him to testify regarding changes in the will she wanted made, since (1) with respect to preparation of the will, the record failed to show what the propounder's testimony would have been; any error was rendered harmless when the purported will was admitted into evidence and the propounder testified that he prepared it in strict conformity with testatrix' instructions; and (2) with respect to changes in the will, the excluded testimony would have shown a further unnatural attitude on the part of testatrix towards her children and certain of her grandchildren, the natural objects of her bounty.

3. **Wills § 22— mental capacity of testatrix—opinion testimony—time of observation of testatrix**

While the competency of a person to make a will is to be determined as of the date of its execution, or its republication, as by a codicil, opinion testimony is not limited to witnesses who observed the person on that date; rather, evidence of the person's mental capacity before and after that date is admissible, provided the time is not too remote to justify an inference that the same condition existed at the time of execution of the will.

4. **Wills § 22— caveat proceedings—mental capacity of testatrix—opinion testimony admissible**

Witnesses in a caveat proceeding who expressed an opinion as to the mental capacity of the testatrix observed or had contacts with testatrix on dates and occasions sufficiently close to the date of the execution of the purported will to express their opinions as to testatrix' mental capacity on that date, and such opinion testimony was not improper because it was given in response to a question as to whether, from their *knowledge* and observation of testatrix, the witnesses had opinions as to the testatrix' mental capacity, the word "knowledge" being used in the same sense as "acquaintance with."

In re Worrell

5. **Wills § 23— caveat proceeding—mental capacity of testatrix—nature of natural objects of bounty—error not prejudicial**

    Propounders in a caveat proceeding were not prejudiced by the trial court's error in instructing the jury that the testatrix must have sufficient mental capacity to know the "nature of" the natural objects of her bounty, since the jury instructions as a whole fairly presented the law applicable to the case.

6. **Wills § 23— caveat proceeding—mental competency of testatrix—obligation to natural objects of bounty**

    The trial court in a caveat proceeding did not err in instructing the jury that "[t]he question of mental capacity involves that question of whether the testatrix's mind was in such condition that she recognized her obligation to the objects of her bounty and their relation to her . . . ," since a testator's obligation to the natural objects of his bounty is a proper factor for the jury to consider on the question of mental competency.

7. **Wills § 22— caveat proceeding—testatrix' competency "to make a will"—evidence and instructions not prejudicial**

    The trial court in a caveat proceeding did not commit prejudicial error in allowing a witness to testify that testatrix was not mentally competent to make a will and in repeating the error in the recapitulation of the evidence, since counsel for caveator meticulously asked each of their seven or eight witnesses whether testatrix on the day in question had sufficient mental capacity to know the nature and extent of her property, to know the natural objects of her bounty, or to realize the full force and effect of the disposition of her property by will; in only one instance did the witness reply that testatrix was not competent "to make a will"; and only in summarizing the testimony of that one witness did the court err.

8. **Clerks of Court § 4; Appeal and Error § 16.1— appeal from caveat proceeding—letters testamentary—no authority of clerk to revoke**

    The clerk of superior court had no authority to revoke the letters testamentary issued to the person named executor in testatrix' purported will after a jury in a caveat proceeding returned a verdict in favor of caveators, since at the time the clerk attempted to revoke the letters, propounders' appeal from judgment in the caveat proceeding was pending. G.S. 1-294.

APPEALS by propounders from judgment entered by *Herring, Judge,* on 10 January 1977, and by caveators from judgment entered by Herring, Judge, on 4 February 1977 in Superior Court, CUMBERLAND County. Appeals consolidated for hearing and determination. Heard in the Court of Appeals 9 January 1978.

Isabell Worrell (Mrs. Worrell) died on 15 April 1976 and a paper writing dated 29 December 1975 was probated as her will. Her surviving son and daughter filed a caveat challenging her capacity to make a will. Seavy Carroll, who was named executor

in, and Campbellton Presbyterian Church, the primary beneficiary under, the will, filed answers in support of the will.

At trial propounders presented Carroll and two other witnesses who testified with respect to the preparation and execution of the will which was then introduced into evidence. The purported will left $500 to Mrs. Worrell's son, $10 to her surviving daughter, various sums to certain grandchildren and great grandchildren and the residue of the estate to Campbellton Presbyterian Church.

Caveators testified and presented several of Mrs. Worrell's friends as witnesses. Their testimony tended to show that at the time in question Mrs. Worrell was 83 years old; that she was in good health until about two years before her death when she grew feeble and her memory and sight deteriorated; that she had heart trouble which required a pacemaker; that she refused to properly wash herself or her clothes and had bad bathroom habits; that she could not take care of herself but refused to live at a rest home, spending the last years of her life living with friends and moving from place to place; that she was greatly concerned with money and would keep substantial sums of cash on her person; that her son signed involuntary commitment papers in order to obtain a mental examination of her but she was never committed; that she had always differed with her children and toward the end of her life showed resentment toward them; that she never attended any church regularly and never mentioned the Campbellton Presbyterian Church; that she told her children that she had left her estate to an orphanage; and that she was buried at a Baptist church. Several witnesses testified that in their opinion Mrs. Worrell did not have sufficient mental capacity to make a will on 29 December 1975.

Propounders presented witnesses who testified that Mrs. Worrell was competent on 29 December 1975 and gave other testimony contradictory to that given by witnesses for the caveators.

Issues were submitted to and answered by the jury as follows:

1. Was the paper writing dated December 29, 1975 executed by Isabell Worrell according to the requirements of the law for a valid Last Will and Testament?

In re Worrell

Answer: Yes.

2. Did Isabell Worrell at the time of signing and executing the paper writing have sufficient mental capacity to make and execute a valid Last Will and Testament?

Answer: No.

3. Is the paper writing and every part thereof, the Last Will and Testament of Isabell Worrell?

Answer: No.

On 10 January 1977 the court entered judgment predicated on the verdict declaring that the paper writing in question was not the last will and testament of Mrs. Worrell. Propounders gave notice of appeal and on 12 January 1977 the court made appeal entries.

On 20 January 1977 the Clerk of the Superior Court of Cumberland County entered an order revoking the letters testamentary of Carroll, executor. Carroll appealed the clerk's order and on 4 February 1977 Judge Herring entered an order reversing the clerk, holding that the clerk was without authority to revoke the letters issued to Carroll pending the appeal of the propounders. Caveators appealed from the order reinstating Carroll as executor.

*A. Maxwell Ruppe for propounders.*

*Barrington, Jones & Witcover, by Henry W. Witcover, for caveators.*

BRITT, Judge.

## APPEAL FROM 10 JANUARY 1977 JUDGMENT

[1] Propounders contend first that the trial court erred in refusing to permit them, during the voir dire examination of prospective jurors, to inquire if they believed in the right of a person to make a will. We think this contention has merit.

G.S. 9-15(a) specifically provides that any party to an action, or his counsel of record, "shall be allowed, in selecting the jury, to make direct oral inquiry of any prospective juror as to the fitness and competency of any person to serve as a juror . . . ."

The voir dire examination of prospective jurors serves a dual purpose: (1) to ascertain whether grounds exist for challenge for cause; and (2) to enable counsel to exercise intelligently the peremptory challenges allowed by law. *State v. Carey*, 285 N.C. 497, 206 S.E. 2d 213 (1974); *State v. Dawson*, 281 N.C. 645, 190 S.E. 2d 196 (1972). The primary purpose of the voir dire of prospective jurors is to select an impartial jury. *State v. Lee*, 292 N.C. 617, 234 S.E. 2d 574 (1977).

While the regulation of the manner and extent of the inquiry on voir dire rests largely in the trial judge's discretion, his exercise of discretion is not absolute and is subject to review on appeal. 8 Strong's N.C. Index 3d, Jury § 6. It is conceivable that many people, for one reason or another, do not agree with the statutory right of a person to make a will. In view of that possibility, we think the propounders should have been allowed to question prospective jurors with respect to their feelings on that question.

Although we feel that the trial court erred, we do not think the error, standing alone, was sufficiently prejudicial to warrant a new trial. This is particularly true in view of the court's instruction to the jury that "[a] testatrix has the right to leave her property to whomever she pleases if she has the mental capacity to do so".

[2] Propounders contend next that the court erred in failing to permit Mr. Carroll to testify with respect to his conversation with Mrs. Worrell prior to preparation of the purported will relating how she wanted to leave her property; and, in not allowing him to testify regarding changes in the will she wanted made. We find no prejudicial error in this contention.

The first part of this contention relates to Carroll's testimony when propounders presented their initial evidence to prove the formal execution of the purported will. The record fails to disclose what Carroll's testimony would have been had he been allowed to testify, therefore, we are unable to say if the exclusion was prejudicial. *State v. Miller*, 288 N.C. 582, 220 S.E. 2d 326 (1975). Furthermore, it would appear that any error was rendered harmless when the purported will was admitted into evidence and Carroll testified that he prepared it in strict conformity with Mrs. Worrell's instructions.

The second part of the contention relates to Carroll's effort to testify with regard to changes Mrs. Worrell stated she wanted to make in the purported will. Carroll testified that Mrs. Worrell contacted him with regard to these changes not long before she died, but by the time he was able to prepare a new will and see her in the hospital, her condition had deteriorated to the extent she was unable to transact business.

Carroll's testimony on this point is included in the record. The only changes the new will would have made would have been to reduce the bequests to her grandchildren John Scott Worrell and Elizabeth Ann Snyder from $500.00 each to $1.00 each, the bequests to her son Frederick from $500.00 to $1.00 and the bequests to her daughter Sarah from $10.00 to $1.00. Assuming, *arguendo*, that propounders have properly preserved their exceptions to the exclusion of this testimony, and that the testimony was admissible, we do not think the exclusion was sufficiently prejudicial to warrant a new trial. While it would have confirmed her desire to leave the major portion of her estate to the Campbellton Presbyterian Church, it would have shown a further unnatural attitude towards her children and certain of her grandchildren, the natural objects of her bounty.

Propounders contend next that the court committed prejudicial error in allowing caveators' witnesses to give their opinions on Mrs. Worrell's mental capacity. We find this contention without merit.

On this contention propounders argue first that proper foundation for the opinion testimony was not laid in that it was not shown that the witnesses saw Mrs. Worrell on 29 December 1975, the date she executed the purported will.

[3] While the competency of a person to make a will is to be determined as of the date of its execution, or its republication, as by a codicil, *In Re Hargrove*, 206 N.C. 307, 173 S.E. 577 (1934), *In Re Ross*, 182 N.C. 477, 109 S.E. 365 (1921), opinion testimony is not limited to witnesses who observed the person on that date. "Evidence of the party's mental condition before and after the particular time in question is admissible, provided the time is not too remote to justify an inference that the same condition existed at the time in question." 1 Stansbury's N.C. Evidence, Brandis Revision, § 127, page 406.

The question then arises, when is such evidence to be deemed remote? While it is impossible to get a definite answer from the text writers and decided cases, the rule of reason has been adopted as the law in this State. *In Re Hargrove, supra.* As was said in *Hargrove* (page 311), "[n]o precise or mathematical definition can be fashioned. . . . The interpretation of the term must ultimately depend upon the variability of given facts and circumstances. . . . An examination of many authorities discloses that the rule of reason in such matters is the prevailing judicial thought".

[4]    A careful review of the testimony given by the witnesses for the caveators leads us to conclude that each of them observed, or had contacts with, Mrs. Worrell on dates and occasions sufficiently close to 29 December 1975 to express his or her opinion as to Mrs. Worrell's mental capacity on that date.

Propounders argue that the opinion testimony was improper because it was based in part on the witnesses' *knowledge* of Mrs. Worrell. We find this argument unpersuasive. The question asked each of the witnesses was phrased substantially as follows: From your knowledge and observation of (testatrix) do you have an opinion as to whether or not on 29 December 1975 she had mental capacity to know the natural objects of her bounty, to comprehend the kind and character of her property, to understand the nature and effects of her act and to make a disposition of her property?

We think the word "knowledge" was used in the same sense as "acquaintance with". A person *knows* another person in about the same sense that he is *acquainted with* that person. Probably the question would have been better had it been phrased "From your acquaintance with and observation of Mrs. Worrell", etc., but we perceive no prejudice to propounders in the way it was phrased.

Propounders contend next that the court committed error prejudicial to them in permitting the caveators to recall a propounders' witness for further cross-examination and then present a witness in rebuttal. We find no merit in this contention. In the trial of a case the order of proof rests largely in the discretion of the trial judge. 7 Strong's N.C. Index 2d, Trial § 14. We perceive no abuse of discretion in the instance complained of.

[5]  Propounders contend that the trial court erred in instructing the jury that the testatrix must have sufficient mental capacity to know the "nature of" the natural objects of her bounty. We find no merit in this contention.

In his instructions on the second issue, after stating, among other things, that there was a presumption that Mrs. Worrell had sufficient mental capacity to make a will and that the burden was on caveators to prove by the greater weight of the evidence that she did not have sufficient mental capacity, the trial judge charged:

> The law recognizes degrees of mental unsoundness, and not every degree of mental unsoundness or mental weakness is sufficient to destroy testamentary capacity. Testamentary capacity is determined objectively from the standpoint of the purpose to be accomplished. [A testatrix at the time of executing her will must have sufficient mental capacity to know the nature of the natural objects of her bounty and to comprehend the kind and character of her property]
>
> (PROPOUNDER EXCEPTS TO THAT PART OF THE CHARGE IN BRACKETS.) EXCEPTION NO. 50 and to understand the nature and effect of her act, and to make a disposition of her property.

While we agree with propounders that it is not necessary for the maker of a will to have sufficient mental capacity to know the nature of the natural objects of her bounty, we think the error in this instance was *de minimus*. Jury instructions must be considered contextually when challenged for error. *Motor Company v. Insurance Company*, 220 N.C. 168, 16 S.E. 2d 847 (1941); *Cab Co. v. Casualty Company*, 219 N.C. 788, 15 S.E. 2d 295 (1941). When the charge in this case is considered as a whole, we think it fairly presented the law applicable to the case.

[6]  Propounders contend that the trial court erred in giving the following jury instruction:

> "The question of mental capacity involves that question of whether the testatrix's mind was in such condition that she recognized her obligation to the objects of her bounty and their relation to her. If one cannot recall or comprehend

the obligations she morally owes to the natural objects of her bounty, she cannot be said to have testamentary capacity.

We find no merit in this contention.

Propounders argue that the recognition of her obligation to the natural objects of her bounty had no bearing on the mental capacity of the testatrix. While no case in this jurisdiction has been cited, and our research discloses none, specifically supporting the challenged instruction, we believe several Supreme Court opinions support it by implication.

In *In Re Burns' Will*, 121 N.C. 336, 28 S.E. 519 (1897), the court held that in a caveat proceeding and on the question of sanity of the testator, the fact that the testator disinherited all of his children except one to whom he left all of his property, was competent evidence to be passed upon by the jury as bearing upon the capacity of the testator, and hence was the proper subject of discussion by counsel in his argument to the jury.

In *In Re Will of West*, 227 N.C. 204, 41 S.E. 2d 838 (1947), the testator, a white bachelor, devised and bequeathed a substantial part of his property to two Negro children of whom he was the reputed father, and the remainder of his property to his white relatives. In an opinion by Justice Seawell, the court said (page 209): "We are not required at this time to say to what extent testamentary capacity may be impeached by infractions of, or want of conformity to traditions, customs, standards of the testator's community or section, which are supposed to strongly influence personal conduct. In cases of doubtful testamentary capacity, however, evidence of an exclusion of those who, by ties of blood, might be supposed to be the natural objects of the testator's bounty has been accepted as bearing upon the question of mental capacity. *In re Will of Hinton*, 180 N.C., 206, 104 S.E., 341; *In re Redding's Will*, 216 N.C., 497, 5 S.E. (2d), 544."

In *In Re Will of Hinton*, 180 N.C. 206, 104 S.E. 341 (1920), the testator left his substantial holdings to his prosperous living children, to the exclusion of the widow and children of a deceased son whom the evidence showed were in poor financial circumstances. In upholding the admissibility of evidence tending to show the prosperity of the living children and the destitution of the family of the deceased son, the court said (page 212): "Disinheritance of children, or those who, under the particular

facts of this case appears [sic] to have had a strong claim on the testator's bounty, such, for example, as his grandchildren, is competent evidence to show his mental incapacity to execute a will, and generally to show the state of his mind in respect to the transaction. *In re Burn's Will*, 121 N.C., 336; *Bost v. Bost*, 87 N.C., 477; *Reel v. Reel*, 8 N.C., 248; *Howell v. Barden*, 14 N.C., 442."

In the cases just reviewed we think our Supreme Court was saying, among other things, that a testator's obligation to the natural objects of his bounty is a proper factor for the jury to consider on the question of mental competency. Furthermore, the sword cuts both ways as the jury might consider the lack of obligation that the testator owes an erring or unworthy natural object of his bounty.

Propounders contend the trial court erred in instructing the jury "on want of capacity by reason of delusions where there was no evidence of delusions". This contention has no merit. Instructions on this point were fully justified by the evidence that Mrs. Worrell had delusions about people trying to get her money as well as delusions about her being mistreated by her daughter.

[7] Propounders contend next that the court committed prejudicial error in allowing a witness to testify that Mrs. Worrell was not mentally competent to make a will and in repeating the error in the recapitulation of the evidence. We think this contention is without merit.

Propounders argue that it is improper for a witness to testify that a decedent did not have the mental capacity "to make a will" and cites primarily *In Re Will of Tatum*, 233 N.C. 723, 65 S.E. 2d 351 (1951). While we agree with the general rule stated by propounders, we do not think there was a substantial violation of the rule in this case as there was in *Tatum*.

The court in *Tatum* did not award a new trial for the reason that the witnesses expressed opinions that the testator did not have the mental capacity "to make a will", but for the reason that the trial judge, after each summarization of the testimony of some 21 witnesses for the caveators, stated that the witness gave as his opinion that the testator did not have sufficient mental capacity "to make a will". The court pointed out that the witnesses, with "inconsequential" exceptions, in response to questions, the form of which had been sanctioned by the court, stated in

substance that in their opinion the testator on the day in question did not have sufficient mental capacity to know the nature and extent of his property, to know who were the natural objects of his bounty, or to realize the full force and effect of the disposition of his property by will. A new trial was granted on the ground that the trial judge expressed an opinion in violation of G.S. 1-180 in erroneously telling the jury that 21 witnesses testified that in their opinions testator "did not have the mental capacity to make a will".

In the case at hand, counsel for caveators meticulously asked each of their seven or eight witnesses the question in the form sanctioned in *Tatum* and other cases. In only one instance was the answer in violation of the stated rule and only in summarizing the testimony of that witness did the court violate that rule. We think it is easy to distinguish this case from *Tatum*. It is noted that in 1 Stansbury's N.C. Evidence (Brandis Revision) § 127, page 405, the writer refers to the *asking* of the question as opposed to the answer of the witness, as follows: "In will cases it is improper to ask a witness's opinion of the testator's capacity to *make a will*, since a question in that form assumes the witness's knowledge of the legal standards of testamentary capacity".

Finally, propounders contend the trial court abused its discretion in denying their motion to set the verdict aside and grant them a new trial. We find no merit in this contention as the evidence fully supported the verdict.

For the reasons stated, we conclude that propounders have failed to show sufficient error to warrant disturbing the verdict and the judgment appealed from.

\* \* \*

## APPEAL FROM 4 FEBRUARY 1977 JUDGMENT

[8] The judgment entered in the caveat proceeding on 10 January 1977 contains the following provision:

> 2. That the executor named in said paper writing and heretofore qualified by the clerk of this court upon probate in common form is without legal authority further to proceed, and he will at once render to the clerk a final account of all funds and property which has come into his hands and sur-

render the same to a properly appointed and qualified administrator to be appointed by the Clerk.

Propounders gave proper notice of appeal from said judgment and on 12 January 1977 the court made appeal entries.

In an order dated 14 January 1977, filed 20 January 1977, the Clerk of the Superior Court of Cumberland County revoked the letters testamentary issued to Carroll, executor. Carroll appealed from the order and on 4 February 1977 Judge Herring entered judgment declaring null and void the order entered by the clerk for the reason that propounders had appealed from the 10 January 1977 judgment. Caveators appealed to this court.

G.S. 1-294 provides, among other things, that "[w]hen an appeal is perfected as provided by this article it stays all further proceedings in the court below upon the judgment appealed from, or upon the matter embraced therein. . . ." As stated above, the 10 January 1977 judgment entered in the caveat proceeding contained specific provision relating to the status of Carroll as executor. Propounders, including Carroll, executor, duly appealed from the judgment, therefore, the clerk had no authority to revoke his letters testamentary.

\* \* \*

10 January 1977 judgment, no error.

4 February 1977 judgment, affirmed.

Judges HEDRICK and WEBB concur.