RufKiN, Chief Justice.
The issue, as joined in the record, is in the most general form that is admissible: Whether the late husband of the petitioner was at his death seized or possessed of the land in which the dower is claimed? But upon the trial, the defendant offered in evidence two deeds in particular, made by the husband, and insisted that one or the other of them transferred the fee and-^seisin from the husband; admitting at the same time, if that was not the effect of those deeds, that the plaintiff’s husband did die seized.
The Court held that one of those deeds, that-to Duty, was void as against the petitioner, and that she was entitled to a verdict upon the issue, notwithstanding that deed. This point having been thus ruled in favour of the petitioner, *447 would not ordinarily be a subject for reconsideration in this Court, as our attention is more properly given to such errors as are alleged by the party who appeals. But in the present instance the case embraces all the facts in relation to that deed as well as to the other, upon the idea that if that deed to Duty be legally a bar to the petitioner, the errors in* respect to the second deed, if there be any, become immaterial; and consequently, that the verdict and judgment ought not to be disturbed, as upon the whole case they are right. Atkinson v. Clarke, 3 Dev. Rep. 171. There cannot, therefore, be a venire de novo, unless the decision upon that deed be right, and also the decision upon some of the points made respecting the other deed be wrong. It is become thence, the duty of this Court to examine the deed of September 28th, 1835.
'fhe atten: court upo'u property such errors fe^Tby" ^0Party peals”1' But Estates ?u in relation <? a inestion, decided against )ee,aivhfehs le decided for inm? would ren-roiVofei" pompiains, then the ’ consider11 9"es-cause, if improperly (Ieoi(lecl> judg-So beSht f^uponlíic whole case rightf16
The oase f shober vs. 91, apprav-
We are of opinion, that the determination of his Honor, . . . upon the trial, in respect to the first conveyance, is well founded. In Shober v. Hauser, ante 91, it was held, upon full deliberation, that an instrument of this kind, af-S . . fected with usury, is void against the bargainor. It did not, therefore, divest the seizin of the husband; but upon his death, the land, but for the other deed, would have descended to the heir. It is said, however, that a stranger cannot impeach the deed on that ground, and that the bargainor, or his heir alone, can take advantage of it; and it is thence inferred that it is not competent to the widow to allege this objection, but that she must await the action of the heir to regain the possession from one holding adversely upon a claim under this deed. But we deem that inference unfounded, and that the contrary is the law. By the statute, the widow is of all land of which her husband died seized. If the seisin remained in the husband, after he executed the deed, on account of its being void, then he did die seized, and her title to dower was perfect. Indeed, the very terms in which the issue between these parties is couched, shew that the material enquiry is, whether the husband died seized: if hé did, that is decisive of the wife’s right. Nor is it true that the wife gets her dower necessarily through the heir. She paramount the heir. It is true, indeed, that she cannot *448 enter until assignment made; and that in point of tenure, for feu<^ reasons, she holds of the heir or of the person in whom is the reversion of the land assigned for dower. But, in point 0f titLe, her estate does not arise or take effect out of the ownership of the heir or other person making the assignment, put jg considered a continuation of that of the husband; and although between the death of the husband and the assign-merit of dower, a seizin of the heir or another person intervenes) yet upon the assignment she is in by relation from the death of the husband; for “ the lawfodjudgeth no mesne sei-between the husband and wife.” Perkins s. 424. Co. Lit. She does not require the assistance of the heir, but brings her action against any person who has the freehold, ® o « * whether that be the heir or any other. Co. Lit. 38. She maY sue a disseisor, abator or intruder; and hence those persons> having the freehold by wrong, may assign her dower, and thereby bind those who have the right. Co. Lit. 35 a, 357, b. That this must be so is evident, when it is recollected that at common law, the wife was entitled to dow-in all land of which her husband was seized at any lime during the coverture; and that his conveyance did not defeat her right. Consequently, she was entitled when the heir had nothing in the land; and therefore, she was obliged to as-the right for herself. It is true, that is not so in this State, except in cases of conveyances in fraud, or devises in prejudice, of the wife; because dower is only of land of x o • • » which the husband died seised; and if he was seised for the purpose of dower, he was also for that of descent. Still, the ^ heir cannot; hurt the widow — but she may recover against him who has the freehold, whether derived or usurped from the heir. If the husband had made a voidable alienation, and had not avoided it during his life, there would be no title of dower, because he had not the seisin at his death. But if the deed be void, the seisin, remained in the husband, and the right of dower attached thereto. Machel v. Clarke, 2 Ld. Ray. 778, Salk. 619. 11 Mod. 19. Blitheman v. Blitheman, Cro. Eliz. 279.
Nor feudal widowhoids of the hair personhi whom is the in point of tillo her cs_ tate is eon-derivedaS oo°nanua<Ja tion of, that Und! and" beiween'fhe deadi the assign-dow'or'a seisin of the venés,lyet upon the as-siu-nment she is in by from the the
nm require the assist-heir; but action*a-61 Persona”ho has the free-any other1" she may _ sueadissei-sor, abator or intrader, those per-hoiding'lhe freehold by assign her ti°erebybhui f,lose Yho right,
*448 ^ our opinion were different on the point that has been considered, we should yet hold that deed not to be a bar in . , , , . _ _ , this aciion, because it is not competent to the defendant, on. *449 this issue, to shew n title out of the plaintiff’s husband and in a third person. It is so settled in New York. Hitchcock v. Carpenter, 9 John. Rep. 344. Hitchcock v. Harrington, 6 John. Rep. 290. Collins v. Torry, 7 John. Rep. 278. It must follow as one of the numerous examples of the rule long established in this Court, that where both parties claim under the same person, the title of that person is not to be disputed between them, unless one of them can shew a better title in himself. Love v. Gates and Single, at the present term, That the defendant did not shew in this case; for the release from Duty to the defendant was subsequent to this suit, and also to the defendairt’s plea. Had the widow continued in .possession, and had been sued m ejectment by the present defendant, she could not have set up a title in Duty, to defeat the subsequent deed under which Marrow claims, but would x . 1 have been bound by the estoppel which bound the husband, Buffalow v. Newsom, 1 Dev. Rep. 208. Estoppels being mutual, the defendant must also be precluded from setting up that title against the widow; and as the defendant did not plead that deed, the plaintiff could not reply the estoppel, and so may avail herself of it on the evidence. • — *
Ifa lul3. ban<! ™-'ke avoidable alienation, «voícHmIu dl'l!f.bjfaale’ heno title because he ¡fed* de®d l void, the mained in °' thereto
Where both parties ‘iIaim under person, the p^son ¡sM '|¡0sy°lebd between one of aj'et_ itl
^ecuted by a husband bat not regisr after his rates byre. the°time°of its exeen-the wife’s dowcr.°f
*449 The deed to Duty being thus ont of the plaintiff’s way, the case depends upon the sufficiency of the objections plicable to the deed of February, 1836.
One oí these objections is, that as the deed was not tered until after the husband died, it left the seisin in him at his death, and thereto the title of dower attached. But, ' ' has been established doctrine from an early period, that by relation, a bargain and sale after enrolment,Operates as well for the advantage and disadvantage of the wife, as of the husband and his heir. Thus, if a bargain and sale be made to a man, and he dies, and then the deed is enrolled, his wife ought to be endowed; for the fee is in the bargainee by reíation, and all the consequences of a seisin in fee from the date of the deed must follow. Gilb. Uses, 292. Vaughan v. Atkins, 6 Bur. 2765. On the other hand, although the title of dower arose to the plaintiff upon the death of her husband, yet by the subsequent registration of the deed, it became in its legal operation, an alienation in his life-time, and therefore *450 before the title of the wife accrued. Shepherd’s Touchstone states this case: If A. bargain and sell his land to B. in fee, and then marry O. and die5 and C. be endowed, and after-*warc^s ^ie deed is enrolled, the dower of the woman shall be taken away by relation, as was held in Baron Trevill's case, 22 Eliz. Touch. 226, Cro. Car. 217, 569.
it js farther objected that, as this is a deed of trust, there is, by the words of the act of 1829, ch. 20, 1 Rev. Stat. ch. 37, sec. 24, no relation back, and that the deed does not pass an7 ProPei'ty but from the registration. But this is only true, in respect of creditors and purchasers; and the wife is neither a creditor nor a purchaser in our opinion. There is no contract between husband and wife for curtesy or dower: — k The interest the one gets in the property of the other the law gives, for the encouragement of matrimony. We have so held in respect to the husband’s right to his wife’s chattels. Logan v. Simmons, 1 Dev. & Bat. 13. All the old authorities say that the tenant by curtesy is in the post, that is, by operation of law. Co. Lit. 30, b. Note 7. They are not so well agreed about the wife; some supposing that she is in by the husband, or in the per by force of the marriage agreement; and others, that she, like the husband, takes by force of the general law. Co. Lit. 30, b. Note 7, 239, a. 7 Rep. 73. Perhaps the doubt arose from the several kinds of dower; for those ad ostium ecclesice and ex assensu patris arose out of an agreement of a nature similar for that for joint-ure in modern times. But it is difficult to distinguish dower at the common law and curtesy as to their origin. But, however the argument may be pursued upon the abstruse point of the old law, how the wife is in, technically speaking, it is certain that such as her estate is, the law makes it without any act of the husband, and even against his will.' She claims therefore under the statute which defines her right of dower, and has made no contract with the husband which constitutes her a purchaser or a creditor.
Another exception is to the admission of Sneed and the other trustee as witnesses. They were called by the defendant to prove the capacity of the bargainor, and thereby support the deed under which they acted, and have claimed *451 and retained a commission. We do not perceive any interest of those persons in this suit; although they probably har-hour a strong bias on the point to which they testify. They are not to have a commission on what may be recovered in this suit; but they have already acted and been paid, and have conveyed without covenants or responsibility. They have therefore no interest in the cause; nor can the verdict and judgment .be given in evidence for them; and those are now the tests of competency. It is said, they may be compelled to refund the money now in their hands, if Marrow loses the land by reason of the invalidity of the deed. It is not certain they would be obliged to refund in the event supposed. Batifitbe admitted, still this verdict would not be evidence against them of the want of capacity in their bar-gainor, but it would be necessary to establish the fact by other proof. Our opinion therefore- is, that those were competent witnesses.
Upon the remaining point, we must say, that it seems to us, the evidence offered of the bargainor’s declarations, connected with his conduct, the next day, was relevant and proper. When the enquiry is whether a particular malady, mental or corporeal, existed at a particular time, its existence previously 'and just up to the period, and its existence also just afterwards, furnished together, the strongest presumption that the disease was seated in the system at the given period. It is the practice, on every circuit, to give such evidence in actions on warranties of soundness. It cannot, then, be denied that the plaintiff might prove her husband’s defect of intellect the next day after he made the deed. The only question is, as to the mode of proof. We think the proper mode must be by shewing such facts as are ordinarily regarded as indicia of a sound or of a disordered or decayed reason.— These are, the appearance, the deportment, the conversation and the acts of the person. It would have been more satisfactory, if the exception had set forth thepartichlarlanguage and conduct of the husband which it was proposed to prove. For, certainly, he might say and do many things that would not be competent. If he said, that he had no recollection of making the deed, that he was drunk and had been imposed *452 on, or the like, we should think that bis Honor properly ex-eluded evidence of the declarations; for, if admitted, that would be to impeach a deed by subsequent declarations, as importing truth in themselves, instead of laying before the jury the conversations of the person upon subjects generally, and not on this particular transaction only, as denoting not imposition merely, but, with other things, as denoting a want of understanding to make a bargain. From the nature of the investigation before the jury, any wild, incoherent or irrational opinions, narrations, imaginations or contracts, or the acts or behaviour of the party, generally, must of necessity be considered. But only such can be heard as indicate that at the time of making them, the person was insane, and not those which purport to be assertions of the person that he was not sane at the time of doing a certain act. It is true, even madness is sometimes simulated, and many a common man may be unable to detect the imposition. But it is not more difficult to do so after the transaction than at or before it; and at each period the judgment is formed upon the same species of evidence. From the risk of deception by the person whose interest it may be to stultify himself, and from the inability of many men to appreciate properly what passes before them, as evidence of sanity or insanity, the evidence of the kind we are speaking Qf may frequently be entitled to but little weight. Perhaps, that might have been the case here; for, from the nature of this person’s case, the evidence of his state next day would have but faintly reflected back on his condition at the execution of the deed, unless the evidence related to corresponding hours of each day, and unless the quantum of stimulus and the period of taking it, should also turn out to be alike on both days. But the weight must necessarily be estimated by the jury. We do not think that such evidence is so entirely without weight, or so suspicious, that none ought to be heard. On the contrary, if a witness was, for example, with the person all the second day, and described his treatment to be such as ought to have roused his dormant faculties on that day, if it did on that previous, and yet should be believed when he stated that it had no such effect, but that the party was throughout lethar *453 gic, stupid or delirious; it could not be denied, that either the veracity or the judgment of those who testified to his state when he made the deed, would be'materially discredited.
Against this we are not aware of any thing, unless it be the case of the State v. Scott, 1 Hawks, 24. We own that our minds are not satisfied with the reasoning in the opinion; and indeed we are not certain that it is correctly understood by us. But this may be distinguished from that case; and therefore in coming to the decision we have, we do not overrule Scott’s case. In the first place, although the exception there stated, that the prisoner offered his declarations “in ■connexion with his conduct,” yet Judge Henderson’s opinion clearly treats the question as if it concerned declarations by themselves; which he said a majorityrnf the Court thought were not evidence unless they accompanied acts, though his inclination was the other way. Perhaps, therefore, the decision may be attributed to the Courts’ not adverting to the circumstance that evidence of conduct as well as of words was offered. But there is another difference between the cases. There, no ground was laid for any suspicion of previous insanity; so that the subsequent exhibition of it for but a day, might have been rejected upon a presumption that it must be simulated. Here, the object is to shew that the same marks of an enfeebled mind existed afterwards as unquestionably had, during portions at least of each day, for a considerable period before the excution of the deed. — . We think that such evidence must be received, because evidence of that description is all that the nature of the case ad. mits of; and therefore that the judgment must be reversed and another trial had.
Per Curiam. Judgment,reversed.