F. B. MITCHELL and wife et als., caveators, v. A. J. CORPENING
et als., propounders.

(Decided April 18, 1899).

*Wills—Caveat—Evidence.*

1. An act of civility on the part of counsel in handing a juror a
   glass of water, at his request, has no element of impropriety
   in it.

2. Where there is no allegation nor evidence of insanity as the
   foundation of the caveat; but imbecility of mind, growing
   out of weakness produced by protracted illness, was the
   alleged foundation, and there was evidence tending to prove it,
   a special instruction bearing upon insanity only is inappli-
   cable.

3. It is not required that instructions asked for should be given
   in the very words of the prayer; it is sufficient if fully and
   fairly given in the charge of the Court.

4. If the testatrix had a protracted illness which was attended by
   a gradual weakening of body and mind until her death, and
   if at the time of the execution of the will there was evidence
   tending to show that she was not of testamentary capacity,
   and so weak that she had to be lifted up to sign the paper—
   evidence of her mental condition a *very few* days thereafter
   is some evidence of her mental condition when the will was
   made.

ISSUE of *Devisavit vel non, in re.* the Will of Lucinda L.
Tuttle, tried before *Coble, J.,* at Fall Term, 1898, of the
Superior Court of CALDWELL County. His Honor thus stated
the issue to the jury:

"The issue submitted to the jury is: 'Is the writing
offered, the Will of Lucinda L. Tuttle, deceased?' If the
jury find from the evidence that the writing offered was
written in the lifetime of Lucinda L. Tuttle; that the said
writing was signed by her; that it was subscribed in her pres-

ence by M. H. Tuttle and J. M. Crump as witnesses thereto, then the jury will answer the issue, 'Yes'—unless the caveators have shown by a great weight of the evidence, either a want of testamentary capacity in the testatrix, or that undue influence was exerted upon the testatrix at the time of the execution of the alleged Will."

The jury answered the issue, "No."

The errors assigned by the propounders upon their motion for a new trial are sufficiently adverted to in the opinion. There was judgment in accordance with the verdict, and appeal by the propounders.

No counsel for appellants.

*Mr. Edmund Jones,* for the caveators.

MONTGOMERY, J.   The appellants were not represented here by counsel nor was there a brief filed in their behalf; in fact the case on their part seems to have been abandoned, and upon our reviewing it we feel safe in saying that in that respect, at least, their course was a wise one.   The first exception was to what the appellants call the conduct of one of the counsel of the caveators on the trial.   The offending lawyer during the trial, in open court, went to the water pitcher near the jury-box and quenched his own thirst with a glass of water; several jurors taking the contagion, gave him a sign that they too would like to partake of the cooling draught, whereupon he politely waited on them.   For which cause it is insisted that the Supreme Court ought to grant a new trial of the case.

This to us seems to be trifling with the court.

The second exception was to the refusal of His Honor to instruct the jury that "Sanity is the natural and usual condition of the human mind, and every person is presumed to be

sane. If the deceased was not insane then the execution of her Will was a valid one." The first sentence of the requested instruction was taken word for word, from the opinion of the Court in the case of *Sawyer v. Wood,* 67 N. C., 277. In that case the caveat to the Will was filed on the alleged ground of the insanity of the testator. In the case before us the foundation of the caveat to the Will is not the alleged insanity of the testatrix at the time of its execution, but her imbecility of mind, growing out of weakness produced by a long continued illness; and there was not a syllable of the evidence introduced for the purpose of showing insanity of the testatrix, or that tended to prove it. There was, however, testimony strongly tending to prove imbecility—total mental incapacity—as well as great physical exhaustion from weakness and disease. The instruction could not have been given in any view of the case.

The third exception was to the refusal of the court to charge the jury "That the caveators impeaching the validity of the Will must affirmatively show the want of capacity, or the exercise of undue influence, which is defined to be influence by fraud or force, and they must show its application to the making of the Will. How this exception could be insisted in the face of the instruction on the point which His Honor gave in the general charge, is a puzzle to us.

His Honor said:

"Did she, the said Lucinda L. Tuttle, at the time of the execution of the script or writing in question, have sufficient mental capacity to understand the nature and character of the property disposed of? To whom she was giving her property and how she was disposing of the property? If so, then she was of sound mind and memory within the meaning of the law; if not, then she had not testamentary capacity. The law is, that to be of sound and disposing mind and mem-

ory, so as to be capable of making a valid will, the deceased must at the time of executing the paper writing have had sufficient mental capacity to understand the nature and character of the property disposed of, to whom she was willing it and how she was disposing of her property. If at the time of the alleged execution of the said writing the said testatrix had the capacity to know what she was doing, and was capable of understanding the nature and character of the property disposed of, to whom and in what way she was disposing of her property, then her mental capacity would be sufficient. On the question of undue influence the real enquiry to be determined is: Did the said Lucinda L. Tuttle, deceased, make and execute the alleged Will in all its provisions, of her own free will and volition so that it now expresses her own wishes and intentions, or was she constrained or coerced through the undue influence, restraint or coercion of others in making her Will, to act against her own desire and intention, as regards the disposition of her property or any part of it. And the jury are instructed that the influence exercised over a testator or testatrix, which the law regards as undue or illegal must be such as to destroy her free agency in the matter of making the will, but it matters not how little the influence, if her free agency is destroyed it vitiates the act which is the result of it; and the amount of undue influence which will be sufficient to invalidate a will may vary with the strength or weakness of the mind of the testatrix, and the influence which would subdue and control a mind and will naturally weak or one which had become impaired by age, disease or other cause, might have no effect to overcome a mind naturally strong and unimpaired. The jury are instructed that any influence exercised upon the testatrix if proved by reason of which her mind was so embarrassed and restrained in its operations that she had not control of her own opinions and wishes in respect to the

disposition of her estate was undue influence within the meaning of the law. It is not, however, unlawful for one by honest advice or persuasion to induce a person to make a Will or to influence him in the disposition of his property by Will. To vitiate a Will on account of undue influence it must appear from the evidence that there was something wrongfully done amounting to a species of fraud or moral force and coercion or other improper conduct destroying free agency, so that the will does not express the real wishes of the testatrix or testator, but those of some other person.

Several exceptions were made to the charge of His Honor, but upon an examination of them they are found to be no more meritorious than those to the refusal of His Honor to give the special instructions requested.

One of the objections made by the propounders to a part of the evidence is of sufficient importance to be considered. The testatrix had been sick some year or more, and in bed for the two or three months preceding her death. The evidence of the caveators tended to prove that the mind and body of the testatrix had gradually declined and weakened from her long and serious sickness, till her death; and there was evidence tending to show that when the will was executed she did not have testamentary capacity, and her bodily strength almost exhausted. In connection with that matter a witness was allowed to testify, over the objection of the propounders (appellants) that in a *very few days* after the execution of the Will, he, in company with the pastor of the testatrix, went to see her, and that she was found utterly unable to understand or to comprehend anything he said to her. If the testatrix had had a protracted illness and there had been a gradual weakening of the body and the mind until death, and if at the time of the execution of the Will she was not of testamentary capacity, and so weak that she had to be

lifted up to sign the paper, then we think that her condition of mind at that time was some evidence of what her mental condition was when the will was made.    In *Norwood v. Morrow,* 20 N. C., 442, this Court held : "It seems to us that the evidence offered of the bargainor's declaration, connected with his conduct the next day, was relevant and proper. When the inquiry is whether a particular malady, mental or corporal, existed at a particular time, its existence previously and just up to the period, and its existence also just afterwards, furnished together the strongest presumption that the disease was seated in the system at the given period."    The principle of evidence announced in the last named case is not precisely like that involved in this case, but we think there is an analogy between them.    There was no error  and the judgment is affirmed.

FURCHES, J., did not sit on the hearing of this case.