## IN RE WILL OF SUDIE HARGROVE.

(Filed 21 March, 1934.)

**1. Wills D h—Testimony of incapacity of testator to make will within reasonable time before and after its execution is competent.**

Upon the issue of mental capacity of a testator to make a will at the time of its execution evidence of incapacity within a reasonable time before and after its execution is competent, and what is a reasonable time cannot be definitely limited, but must be determined in accordance with the facts and circumstances of each particular case.

**2. Same: Evidence K a—Nonexpert may testify as to mental capacity of testator.**

Nonexperts are competent to give opinions as to the mental capacity of a testator at the time of the execution of the will, but such opinions must be based on the witnesses' acquaintance with, observation of or experience with the testator.

**3. Same—Testimony of mental incapacity of testatrix held too remote from time of execution of will to be competent.**

Testimony of a witness that the testatrix did not have sufficient mental capacity to execute a will when he talked with her some nineteen years after the execution of the will caveated *is held* too remote to be competent on the issue of the testatrix's mental capacity at the time of the execution of the will.

**4. Same—Testimony of witness held not responsive to question and was incompetent on issue of mental capacity of testatrix.**

In this caveat proceeding the sole issue was the mental capacity of the testatrix at the time of the execution of the will. A witness was asked his opinion as to testatrix's mental capacity and answered that he thought she knew she was making a will but did not know the purport of it because of undue influence exerted upon her: *Held,* the answer was not responsive to the question, and was not relevant to the issue of mental capacity, and propounders' motion to strike out the answer should have been allowed.

**5. Appeal and Error J g—**

Where a new trial is awarded propounders upon appeal the question of the correctness of the taxing of the costs in the lower court becomes immaterial.

In re Will of Hargrove.

Civil action, before *Grady, J.,* at August Term, 1933, of Sampson.

Sudie Hargrove executed a will on 27 February, 1906. This will appears in the opinion in a former appeal reported in 205 N. C., at page 72. She died 15 April, 1930. She was never married. In 1931 two nephews filed a caveat alleging that "Sudie Hargrove did not have the capacity to make and execute a will, and that she was not of sound and disposing mind and memory at and during said time." More than one hundred witnesses were examined by the parties and more. than one hundred and forty exceptions taken during the trial. The evidence tended to show that Sudie Hargrove was a college graduate, attending Saint Mary's at Raleigh and a northern institution, and as a young woman had been a school teacher for some time. During her life she had executed and delivered several deeds and conveyances of land and timber.

The evidence tending to show mental incapacity may be capitulated as follows:

1. That she and her maiden sister, who predeceased her, did not live with the mother after the death of her father.

2. That she had sold timber to a witness several times and when he would ask her to make another sale, she would refuse to do it, but afterwards conveyed the timber.

3. That a couple of times since 1910, when in church and the preacher would say something that she approved, she would say in a low tone so it could be heard by those sitting around her, "That's the truth," and frequently when in church if the preacher said something that she did not like she would say, "That's a lie."

4. She was very excitable. If you crossed her "she went up in the air."

5. On one occasion her dog followed her to church and disturbed the preacher, and he put the dog out the window. Thereupon the testatrix got up and said: "If my dog can't stay I shall not either."

6. She attempted to list a piano for taxes at a valuation of one dollar.

7. That she did not recognize her brother in 1923 when he came back home after an absence of about forty years.

8. That she kept her dogs in the room with her. "They had a bed and she had one." She prepared for the dogs like she would one of the family; made cakes for them and bought candy for them and cooked chicken for them, and she cooked cakes for the dogs Christmas.

9. That she had not erected a tombstone at the grave of her parents.

10. "In her dress she was always behind the date."

11. That she threatened to shoot a witness if he cut any of her trees.

12. That in 1904 or 1905, prior to making the will, she asked witness every time he met her who his father was and if he had any mutton suet. She ran the tax collector off her land. She allowed the plantation to run down and grow up in bushes and trees.

13. That in 1909, after the will was made, the testatrix had said: "They expect me to leave my money to the church, but I am not going to do it."

There was much opinion evidence by nonexpert witnesses as to the mental capacity of testatrix. Twenty of these witnesses first knew the testatrix after the execution of the will. These witnesses were permitted to testify as to various acts as above capitulated, extending from the year 1909 to the time of her death. Some of these witnesses had not known the deceased until more than twenty years after the will was made. There were other witnesses who lived in the community and had known the deceased prior to 1906 and thereafter, who testified that in their opinion she did not have sufficient mental capacity to make a will. The propounders offered the testimony of approximately twenty-five witnesses, who testified that the deceased was a college graduate, devoted to the church, a shrewd business woman, a subscriber and reader of magazines and newspapers, including the *New York Herald, Saturday Evening Post,* and well informed on the general topics of the day, intellectual and cultured.

The jury found that the testatrix did not have mental capacity to execute a will on 27 February, 1906, and judgment was rendered in favor of the caveators. The judgment further taxed the costs of the proceeding against the trustees "of the Eastern Diocese of North Carolina, and James Hargrove, Isaac Hargrove and Everett Simmons."

From the foregoing judgment the propounders appealed.

*Butler & Butler for propounders.*
*J. Faison Thomson and Hugh Brown Campbell for caveators.*
*Henry E. Faison of counsel.*

Brogden, J. (1) What limitations are imposed by law upon the admissibility of the acts, conversation and general conduct of a testator or testatrix subsequent to the execution of a will in a caveat proceeding based upon mental incapacity at the time the will was executed?

(2) Was the cost properly taxed?

The ultimate quest of the trial was to discover the mental condition or testamentary capacity of the testatrix on 27 February, 1906. This idea was expressed *In re Ross,* 182 N. C., 477, 109 S. E., 365, as follows: "The competency of testatrix to make the will in question is to be determined as of the date of its execution, or of its republication, as by a codicil, . . . and not when instructions for its preparation were

given. . . . Of course, the conduct of testatrix at the time of this conference is competent and relevant, as bearing upon the question of her testamentary capacity; but, notwithstanding her mental condition at that time, this would not necessarily establish her competency to execute the will at the subsequent date." The same thought was exemplified in *In re Smith's Will,* 163 N. C., 464, 79 S. E., 977. In that case a will was executed on 26 September, 1911. The caveators undertook to offer in evidence the record in a special proceeding entitled "W. R. Smith, lunatic," dated April, 1912. The trial judge excluded the evidence and in discussing the objection to such ruling, the Court said: "If the record had any relevancy to the issue, the date to which it related was too remote for any legal bearing upon the case. There must, of course, be some rational connection between the two and some reasonable proximity in point of time, so that the proof that is offered will have at least some tendency to establish the fact embodied in the issue. Such was not the case here. The record was made some time after the date of the will."

The caveators offered in evidence the testimony of approximately sixteen witnesses, to wit, O. L. Taylor, Ben. W. Oates, A. W. Oates, C. E. Weatherington, Dr. Paul Crumpler, Joe Creel, John R. Price, George W. Massey, S. G. Avant, Walter Kelly, Dave Raynor, Amy Jackson, Paul Armstrong, Arthur King, M. L. Hobbs, L. H. Ellis, and A. L. Sutton. These witnesses all testified that in their opinion the testatrix did not have testamentary capacity on 27 February, 1906. It appeared, however, that none of said witnesses knew the deceased in 1906. Two of the witnesses first became acquainted with her in 1908 or 1909, one in 1911, two in 1912 or 1913, some in 1914 and 1915, others in 1918, 1919, 1920, one in 1924, and two in 1926. Hence, the opinions of these witnesses were based upon acts and conduct of deceased after the execution of the will and ranging in time from two to twenty years. The decided weight of authority upon the subject is to the effect that the conversation, acts, conduct and general demeanor of a testator or testatrix previous to the execution of a will, at the time of the execution, and subsequent to the execution thereof are competent and relevant upon the issue of testamentary capacity. The common sense of mankind knows that material changes may occur in both body and mind within comparatively short periods of time. Hence the question occurs: When is such evidence to be deemed proximate and when remote? The answer given by textwriters and decided cases are as variable as the particular point of view or approach.

The rule of reason has been adopted as the law in this State. In the *Will of Stocks,* 175 N. C., 224, 95 S. E., 360, the Court quoted with approval the utterance of the Minnesota Court, as follows: "Where the issue is the mental capacity of the testator at the time of making

the will, evidence of incapacity within a reasonable time before and after, is relevant and admissible." Naturally, it will be inquired what is meant by reasonable time. No precise or mathematical definition can be fashioned. The term itself is ordinarily clearer than definitions. Usually definitions cloud rather than clarify.

The interpretation of the term must ultimately depend upon the variability of given facts and circumstances. In the *Smith case, supra,* it was intimated by the Court that a lunacy proceeding for the testator instituted approximately seven months after making the will was too remote. In the case of *Mitchell v. Corpening,* 124 N. C., 472, 32 S. E., 798, it was held that evidence of mental condition a "very few days" after the execution of the will was competent. Finally, in *Wood v. Sawyer,* 61 N. C., 251, it was held that a paper written two years after the date of the will, setting forth the reasons for making it, was competent upon testamentary capacity. Likewise, in *Norwood v. Marrow,* 20 N. C., 578, it was held that evidence of mental capacity the next day was competent on the question of capacity to make a deed. Upon the other hand, it has been held *In re Burns' Will,* 121 N. C., 336, 28 S. E., 519, that the declarations and conduct of a testator "are not received as a part of *res gestæ,* but whether made long before or after making the will is immaterial as to their competency." See Wigmore on Evidence, 2d ed., Vol. I, section 233, *et seq.*

An examination of many authorities discloses that the rule of reason in such matters is the prevailing judicial thought. Certainly it is the latest utterance of this Court.

There is no evidence that the testatrix suffered with a disease tending to produce mental impairment and progressive in its nature. The opinions of the witnesses referred to were based upon disconnected and unrelated incidents. Courts and textwriters all agree that the opinions of nonexperts are competent to show testamentary capacity at a given time. However, such opinions must be fashioned out of some sort of acquaintance, observation or experience. The material out of which such opinions must be formed was pointed out in the case of *Will of Stocks, supra.* The Court said: "These witnesses, ten in number, all testified that they knew the testator well; had conversations or business transactions with him, and from what they saw of him and their dealings with him, seeing him, hearing him talk, and association with him, in their opinion he had mental capacity to know what he was doing, what property he had and to whom he wished to give it." Consequently, the final inquiry is whether association, acquaintance, transactions and conversations that took place between witnesses and the testatrix from two to twenty years after the execution of the will have any "rational connection" or "reasonable proximity in point of time" to the vital issue. At least, it can be

stated that no case in this State has been called to the attention of the Court in which disconnected incidents occurring more than two or three years after the execution of the will have been approved in determining mental capacity. Therefore, the Court is of the opinion that such evidence, whether offered by propounders or caveators, is incompetent. However, it is not to be assumed that the Court intends to prescribe a time limit. The best that appellate courts can do in dealing with the subtle processes of the mind is to interpret facts in such cases by the rule of reason and common sense.

Caveators offered a witness named George W. Massey, who testified he saw testatrix one time in 1925, and had an opportunity to talk with her. The following question was propounded: "From your observation and conversation with Miss Sudie Hargrove, did you form an opinion satisfactory to yourself, as to whether or not Miss Sudie Hargrove at the time in 1925 when you observed her had sufficient mental capacity to know and understand the nature and extent of her property, to know who were the natural objects of her bounty, and to realize the full force and effect of the disposition of her property by will?" The propounder objected and excepted. The witness answered: "I don't think she was." Testamentary capacity in the year 1925, or nineteen years after the will was executed, was not the point, and the question should have been excluded. The caveators offered a witness named Sam H. Hobbs, who testified that he had known testatrix forty years. On cross-examination he was asked the following question: "When she was writing her will, don't you think she knew she was going to make a will?" The witness answered: "I think she thought she was making a will, but didn't know the purport of it. To my mind, there had been undue influence on her to the extent that she didn't know what she was doing." The propounder moved to strike out the answer. Motion was denied and propounder excepted. The caveat did not allege undue influence as a basis for invalidating the will, and obviously the answer was in nowise responsive to the question and should have been excluded.

The Court is of the opinion that the questions of estoppel by deed debated in the briefs have no bearing upon the essential and determinative issue.

There was competent evidence of mental incapacity to be submitted to the jury, but as we interpret the record, the errors specified warrant a new trial of this cause. Undoubtedly, it is the policy of the law to bring an end to litigation as speedily as exact justice to all parties may permit. Notwithstanding, it is also the policy of the law to guarantee to each and every party a trial in reasonable accord with the principles which the experience and enlightened judgment of mankind have found necessary in the due administration of justice.

The second question relates to the taxing of cost against the trustees and other propounders. The caveators assert that C. S., 1244, governs the ruling and the propounders assert that C. S., 1254, is determinative. Apparently 1244, subsection 2, has been interpreted to mean that the court has the power to tax the cost against the estate, although the will may be upheld. See *Mayo v. Jones,* 78 N. C., 406; *In re Winston's Account,* 172 N. C., 270, 90 S. E., 201. However, this question becomes immaterial as a new trial must be awarded.

New trial.