In re the Will of A. G. HOLMES, Deceased,
and
A. B. HOLMES, C. B. HOLMES, C. C. HOLMES, A. G. HOLMES and MRS. A. R. BENNETT v. MRS. SELENA M. HOLMES.

(Filed 3 January, 1945.)

**1. Evidence § 45a—**

Opinion evidence of a medical expert should be elicited by hypothetical question, and not by simply asking the opinion of the witness.

**2. Husband and Wife § 1: Wills § 21c—**

A wife is not the agent of her husband by force of the marital relationship; and hence the burden of proof, on an issue of undue influence between husband and wife in favor of the wife, is upon the party asserting undue influence.

**3. Wills § 21b—**

The fact that a man bequeaths his estate to his wife, excluding his children and other relatives, does not tend to show mental incapacity or undue influence.

APPEAL by A. B. Holmes, C. B. Holmes, C. C. Holmes, A. G. Holmes and Mrs. A. R. Bennett, caveators, and plaintiffs in above actions, from *Johnson, Special Judge,* at June Special Term, 1944, of BLADEN.

Two civil actions—one, an issue of *devisavit vel non,* and the other, to set aside three deeds, consolidated for purpose of trial and heard together as both are based upon allegations of mental incapacity and the same conditions and relationships and events which it is alleged unduly influenced the execution of the will and the deeds.

Upon the trial in Superior Court these undisputed facts appear:

1. On 21 November, 1905, A. G. Holmes, then 55 years of age, a widower and resident of, and on farm in Columbus County, the father of seven children, five sons and two daughters, ranging in ages from four to eighteen years, married the defendant, then 26 years of age, by which union five daughters were born. A. G. Holmes died testate and resident of Bladen County, on 3 February, 1943, at the age of 88 years, leaving surviving the plaintiffs, who are the remaining five children of the first marriage (a daughter having died, and a son having been killed in World War I, neither of whom is survived by issue) and the defendant, who is his widow, and their five daughters.

2. Prior to his death, A. G. Holmes executed to his wife the defendant three deeds, one of which was acknowledged on 31 January, 1933, and registered in Bladen County, conveying lands in that county, and the other two dated 5 May, 1926, and acknowledged on 21 December, 1937, registered in Bladen and Columbus counties, and conveying lands in those counties.

3. After the death of A. G. Holmes a paper writing purporting to be his last will and testament, dated 17 March, 1933, and admittedly executed in form in accordance with law, was duly probated in common form. By its terms all of his property, real and personal, which he owned at his death, other than $25.00 bequeathed to each of the plaintiffs, children of his first marriage, was devised and bequeathed to his wife with provision that in the event she should remarry the land should go to his "heirs at law by reason of" his "two marriages." But should she remain a widow, she should hold all his lands in fee, and at her death dispose of it as she desires.

Further on the trial in Superior Court, the parties testified and offered much other evidence bearing upon the issues as to the mental capacity of A. G. Holmes to execute a will, and the deeds, at the time each was executed. And separate issues in the two actions were submitted to the jury, all of which were answered against the contentions of the caveators, in the action pertaining to the will, and of the plaintiffs in the action to set aside the deeds.

From judgment in accordance with the verdict in the respective cases, the caveators and plaintiffs, respectively, appeal to the Supreme Court, and assign error.

*Isaac C. Wright, R. J. Hester, Jr., and F. Ertel Carlyle for plaintiffs, caveators, appellants.*

*H. H. Clark and McLean & Stacy for defendant-propounder, appellee.*

WINBORNE, J.  Careful consideration of the questions involved on this appeal as stated, and predicated upon numerous exceptions taken by appellants fails to show error for which a new trial should be granted.

The first question relates to the ruling of the court with respect to the testimony of Dr. A. B. Holmes, caveator and plaintiff, and medical expert.  The ruling arose in this fashion: The witness had testified that while the physical condition of his father to the last was remarkable for a man of his age, he had hardening of the arteries, or arteriosclerosis, and that he was mentally incompetent in 1932 as well as in, and between January, 1933, and December, 1937.  Then counsel for caveators and plaintiffs asked him this question: "Dr. Holmes, do you have an opinion satisfactory to yourself that the hardening of the arteries of human beings will affect the human mind?"  The witness would have said, "I have; it will affect the brain," but defendant's objection to the question was sustained by the court—with the suggestion that that sort of opinion from a medical expert should be elicited by hypothetical question.  In the light of this suggestion, and since the question is framed in general terms, we are of opinion that the ruling was without harm to the propounders of the question.  It is not directed specifically to the opinion of the witness as to the effect of the hardening of arteries observed in A. G. Holmes would have upon his brain.  It is clear that the court would have permitted an answer under a different framing of the question.  Moreover, what the witness would have said was only a reason for the opinion which he had already expressed.  Hence, it would seem that a reversal of the ruling could not be predicated on this exception.

The appellants paramount the fifth question embracing many exceptions, predicated on the theory relied upon by them in regard to the issues of undue influence, that is, that the evidence in the case tends to establish between A. G. Holmes and his wife, the defendant, the relationship of principal and agent, upon which a presumption of fraud as a matter of law arises from a transaction between them, wherein she is benefited, and that the burden of proof is upon her, when the transaction is called in question, to show by the greater weight of the evidence that it was open, fair and honest, and that the court should have so charged the jury.  They rely upon the case of *McNeill v. McNeill*, 223 N. C., 178, 25 S. E. (2d), 615.  The factual situation in that case, however, is distinguishable from that in the case in hand.  There the relationship of principal and agent was created by written power of attorney, and the testator and grantor, and the beneficiary and grantee were not husband and wife, as they are here.  And, while the evidence in the present case tends to show that A. G. Holmes was forgetful and that the wife helped him, and was watchful of him in his dealings in the operation of a certain store in which she had an interest with him, and that in other

respects she was vigilant and aided him in the conduct of his business affairs, there is no evidence in the case from which it could be presumed as a matter of law that her assistance, interest and vigilance were prompted by, or permeated with sinister motives. And a wife is not the agent of her husband by force of the marital relationship between them. 26 Am. Jur., 845, Husband and Wife, 236. Hence, the burden of proof on the issues of undue influence was upon those asserting that the will, and the deeds, were procured by the undue influence of defendant.

Moreover, the fact that a man bequeaths his estate to his wife, excluding his children and other relatives, does not tend to show mental incapacity or undue influence. *In re Peterson,* 136 N. C., 13, 48 S. E., 561. It is there stated: "The silent influence of affection and respect augmented by tender and kindly attention of a faithful wife cannot be regarded as in any sense undue influence."

Furthermore, there appears in the record such expressions as these in the testimony of caveators and plaintiffs as witnesses on the trial below, speaking of their stepmother, the defendant: C. B. Holmes said: "Mrs. Mattie took good care of the home and trained my brothers and sisters and did a good job"; Dr. A. B. Holmes said: "The home surroundings were pleasant. She was kind and attentive to my father"; and Mrs. Bennett said: "I never knew any other mother than Miss Mattie, who was very good to me." Indeed, the record fails to show anything to the contrary. And even after the death of her father, Mrs. Bennett wrote defendant a letter in which she used such expressions as these: "I am for you all the way . . . with all my heart I hope Papa has a will, and that he left everything to you and only you. If anybody starts anything I will get my teeth into them." Also it appears from testimony of these same witnesses and others that all the surviving children of the first marriage received some education above that obtained in public schools, and that only two children of the second marriage had such advantages. Hence, in the light of this evidence, coupled with the factual background revealed in the statement of uncontradicted facts hereinabove, the jury was fully justified in finding that there was no undue influence.

As to other questions involved, as stated by appellants, the record discloses that the course and theory of the trial in Superior Court were in keeping with well settled principles of law as set forth in numerous decisions of this Court, among which are: *Mayo v. Jones,* 78 N. C., 402; *In re Burns' Will,* 121 N. C., 336, 28 S. E., 519; *In re Craven's Will,* 169 N. C., 561, 86 S. E., 587; *In re Will of Brown,* 200 N. C., 440, 157 S. E., 420; *In re Fleming,* 172 N. C., 840, 90 S. E., 3; *In re Will of Hargrove,* 206 N. C., 307, 173 S. E., 577; *In re Will of Redding,* 216 N. C., 497, 5 S. E. (2d), 544; *In re Will of Lomax, ante,* 459.

In the trial below there is

No error.